**Scharf-Norton Center for**
**Constitutional Litigation at the**
**GOLDWATER INSTITUTE**
Jonathan Riches (025712)
Timothy Sandefur (033670)
Adam Shelton (038252)
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diann Amaro,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Tolleson Union High School District; and Jeremy Calles in his individual capacity and in his official capacity as Superintendent of Tolleson Union High School District,<br><br>　　　　Defendants, | No.<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND DAMAGES** |

## INTRODUCTION

1. Plaintiff Diann Amaro is a parent and community advocate who became a frequent and vocal critic of the Defendant Tolleson Union High School District ("TUHSD") Governing Board and Defendant Superintendent Jermey Calles over their wasteful spending. Starting in January 2025, Plaintiff spoke frequently at Defendant District's Governing Board meetings highlighting its uses of taxpayer dollars.

2. Because of Plaintiff's frequent, and sometimes emotive criticism, Defendants permanently banned Plaintiff from all TUHSD property because Defendants resented Plaintiff's criticism. Although Defendants have subsequently amended that ban to let her enter school property to pick up her child and attend events specifically related to her child, she is still restricted from entering TUHSD property for all other purposes under Defendants' order, due solely to her speech.

3.      That speech relates to matters of substantial public concern. For over a year now, Defendants have been embroiled in public controversy. One scandal concerned a Superintendent's accusation that Defendant Governing Board's then-president engaged in sexual harassment; another concerned a nearly half-million dollar settlement to Defendant Calles from Defendant Governing Board; another concerned the lavish salary the District pays the Superintendent; another concerned a $25 million loan to a neighboring school district; still another concerned a 99 year lease of TUHSD property to a developer for affordable housing. These are just some of the controversies that have plagued Defendants in this past year.

4.      Defendants were not pleased with Plaintiff's criticism and when Plaintiff uttered four profanities at two Governing Board meetings, Defendants took the opportunity to silence her by *permanently banning her from all TUHSD property*—a ban delivered to Plaintiff on the same day she was scheduled to speak at a rally outside TUHSD headquarters, to launch a citizens group she helped start to hold Defendants accountable.

5.      This permanent ban constitutes retaliation for constitutionally protected speech. It was inflicted without any opportunity to be heard or to contest it. Although the District has modified the ban, it was, and in its modified form remains, a violation of the First and Fourteenth Amendments to the Constitution of the United States.

## PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff Diann Amaro is a parent of a senior at TUHSD school. Her family has lived in Tolleson for over 100 years. She has attended Defendant Governing Board meetings frequently since January 2025 and has become one of Defendants' most frequent critics. She has attended many events on TUHSD property over the years, including sporting events and events hosted by private entities that have rented TUHSD property.

7.      Defendant Tolleson Union High School District is located at 9801 West Van Buren Street, Tolleson, Arizona, 85353 ("TUHSD"). The School District is a local

2

governmental entity under Arizona law. It is controlled by a Governing Board (the "Board"), which may be sued in the district's name. A.R.S. § 15-326.

8. Defendant Jeremy Calles (the "Superintendent") is the Superintendent of TUHSD. Defendant Calles holds his position under A.R.S. § 15-503 and Defendant Board Policy CB (attached as Exhibit 1), under which he has the power and duty to "enforce the statutes and rules of the state of Arizona and the federal government, and the policies of the Governing Board of the District" and declares that "[t]he administration of the school system in all aspects is the responsibility of the Superintendent, whose functions shall be carried out in accordance with the policies of the Board." Defendant Calles is a "person" under 42 U.S.C. 1983 and at all relevant times acted under color of state law. Defendant Calles is sued in both his official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908), and his individual capacity pursuant to 42 U.S.C. § 1983.

9. This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought under the Civil Rights Act of 1871, 42 U.S.C.§§ 1983 and 1988, and the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202.

10. This Court has jurisdiction under 28 U.S.C. § 1331 and § 1343(a), and 42 U.S.C. § 1988.

11. This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C §§ 2201, 2202 and Fed. R. Civ. P. 57 and 65.

12. Venue is proper in the District of Arizona under 28 U.S.C. § 1391(b)(1) because at least one of the Defendants resides in this District and all Defendants reside in Arizona.

13. Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District.

3

**STATEMENT OF FACTS**

14.    Defendants have been embroiled in financial controversies for over a year, including for their decision to loan a financially struggling neighboring school district—Isaac Elementary School District—$25 million in the form of a lease-lease back agreement whereby Defendants leased property from Isaac for $25 million up front and Isaac then leases back the property to pay back the money over time.

15.    This creative financial deal led to many questions, as community members and lawmakers challenged the propriety of the deal, whether a school district has legal authority to lend money to another, and the wisdom of using a significant amount of money collected from taxpayers in TUHSD that is intended for the students in TUHSD but is used instead to grant financial support to a neighboring district.

16.    This, coupled with other financial controversies, led Plaintiff to become more active in Defendant Board's affairs including speaking at the public comment period at Governing Board meetings.

17.    Plaintiff Amaro first spoke at the January 29, 2025, Governing Board meeting. She spoke out against Defendants' approval of the lease-lease back agreement with the Isaac Elementary School District.

18.    Plaintiff Amaro next spoke at the January 30, 2025, Governing Board meeting. There, she spoke out again against the lease-lease back deal and specifically criticized Defendants' decision to cut teacher salaries and benefits the day after lending the Isaac School District $25 million—and while also directing an additional $25 million to the building of a new district headquarters.

19.    Plaintiff Amaro spoke again at the February 25, 2025, Governing Board meeting. She spoke out against the installation of metal detectors at schools, because of her belief that metal detectors are generally ineffective at preventing guns from being brought onto campus. She also criticized Defendants' decision to terminate the employment of a school safety officer.

4

20. Plaintiff Amaro next spoke at the March 4, 2025, Governing Board meeting. Plaintiff spoke out against a situation where a student brought a gun on campus and yet was allowed to return to school a few days later because no staff member actually saw the gun and the District's decision to "push out" a high school principal whom she believed was qualified to deal with the issue. Further, Plaintiff criticized Defendants for planning the building of a new school facility without any community or teacher input.

21. Plaintiff Amaro then spoke at the March 25, 2025, Governing Board meeting. Defendant Governing Board's then-President, Ms. Leezah Sun, in calling Plaintiff to the podium during the public comment period, sarcastically described Plaintiff as "my favorite." Flustered by this open provocation, Plaintiff Amaro criticized the Defendants' reckless and wasteful spending in light of the potential decreases in federal funding.

22. Plaintiff Amaro spoke again at the April 8, 2025, Defendant Board meeting. At that meeting, to object that curriculum approval for the next year had not been placed on the agenda, even though it was already April, and the deadline was quickly approaching.

23. Plaintiff Amaro then spoke at the April 22, 2025, Governing Board meeting, where she criticized the Isaac School District loan for taking money away from the Tolleson school community. Defendant Calles had recently spoken favorably about that deal on a podcast, in which he also stated that in addition to his job as a Superintendent, he also works as a consultant with 60 to 70 other school districts across Arizona. She criticized this and the Board's decision to renew Defendant Calles' contract.

24. At that meeting, Defendant Board moved to table a consent-agenda item for the approval of hiring certain individuals, the approval of position changes, and the approval of retirements and resignations, leaving it instead for another meeting. Frustrated that the Board had chosen not to address matters relating to such important

5

personnel changes and District spending, Plaintiff chose to leave the meeting and, on her way out, said words to the effect of: "It's so crazy that you can spend fucking money but we can't deal with this shit, huh? I'm fucking done with the shit."

25.    Plaintiff Amaro then spoke twice during separate public comment periods at the May 13, 2025, Governing Board meeting—a meeting which combined a Governing Board work study session and a regular Governing Board meeting. She spoke first at the "work study" session of the meeting and criticized the Board for wasting taxpayer dollars on a consent-agenda item to hire an architecture firm for an item that was close to $15 million. She noted that the money was not the Defendant Governing Board's money but the taxpayer dollars and that the community should be involved in how to spend money for the benefit of the district. Such involvement cannot happen when items are on the consent agenda, and thus not openly discussed.

26.    Plaintiff Amaro spoke later in the same May 13, 2025, meeting where she explained that the money Defendants were spending was the taxpayers' money, not their own, that taxpayers work hard every day at their jobs, and that not all members of the Defendant Governing Board "actually go to fucking work." Plaintiff quickly apologized for this language and continued in her critique of the Defendants' wasteful spending. She ended by stating that she would not stop in her efforts to hold Defendants accountable for wasteful spending.

27.    It was at this May 13, 2025, meeting that Defendants delivered a letter ("First Notice"), herein attached as Exhibit 2.

28.    This letter, which Plaintiff did not read until after the meeting, explained that Defendant Calles had determined that Plaintiff had "disrupted and interfered with the Governing Board Meetings of the District" because she "stormed out of the Governing Board room shouting profanities and slamming your hand against chairs in the presence of minors while the Board was receiving a presentation." *Id*.

6

29.     In this First Notice, Defendant Calles explained that this violated District Policy KFA, hereto attached as Exhibit 3, specifically for "[u]se of profanity, disturbance of a presentation and assaulting District Furniture." Exhibit 2.

30.     The First Notice further states that this is her "final warning" even though Plaintiff never received any previous warning.  It states that "one more incident will result in you being instructed to immediately leave and/or remain off of all property of the District … never [to] come upon or remain upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District property." *Id*.

31.     Finally, the First Notice threatened that a further violation of this order will result in Defendants referring her to law enforcement for criminal prosecution. *Id*.

**The No-Trespass Letter**

32.     Defendants did not remove Plaintiff Amaro from the May 13, 2025, Governing Board meeting, and even allowed her to finish her comment after the utterance of the profanity. But a second letter ("No-Trespass Letter"), hereto attached as Exhibit 4, was handed to Plaintiff on May 21, 2025, before the Defendant District's Governing Board Meeting. This No-Trespass Letter was handed to Plaintiff personally by Defendant Calles before the start of the meeting but after Plaintiff had spoken earlier that day outside district headquarters at a press conference with a newly formed group, Citizens for Schools Accountability (for which Plaintiff is a community advocate), to call for the resignation of the TUHSD Governing Board. Plaintiff did not read the letter until after the meeting, but she was not forcibly removed at that time.

33.     Citizens for Schools Accountability is a nonprofit organization founded in May 2025, dedicated to empowering the Tolleson community and enhancing educational quality within the Tolleson Union High School District. Its goals are to: (1) ensure community representation at TUHSD School Board meetings; (2) oversee the allocation and spending of TUHSD funds; (3) hold the TUHSD School Board and superintendent

accountable for the appropriate use of District Funds and taxpayer dollars; and (4) promote student engagement in education and academic success.

34.    This No-Trespass Letter stated that Defendant Calles determined that Plaintiff "disrupted and interfered with the Governing Board Meetings of the District … [by] shouting profanities from the podium despite the warning that was issued to you previously on May 13." Exhibit 4.

35.    The No-Trespass Letter charged Plaintiff with violating District Policy KFA through the "[u]se of profanity, disturbance of a presentation and assaulting District furniture on a prior notice and repeated profanity on May 13, 2025." *Id*.

36.    Because of that violation, she was "instructed to immediately leave and/or remain off of all property of the District, and that she was "never come upon or remain upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District property." *Id*.

37.    Under that ban, Plaintiff Amaro could not pick up or drop off her child from school, attend any of her child's events, or any events held on TUHSD property, including sporting events, general community events, and events of private parties that rent space from Defendant District.

### District Policy KFA: Public Conduct on School Property

38.    Defendant District Policy KFA, addresses public conduct on School Property. Exhibit 3.

39.    As relevant here, the policy explains that "[a] person may also interfere with or disrupt the District Function by committing any of the following … [u]se of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment." *Id*.

40.    Policy KFA, by its terms, allows the District to prohibit speech that the District finds "offensive and inappropriate," which can be enforced, as it did in this case, to prohibit constitutionally protected speech.

8

**Changes to the No-Trespass Letter**

41.    On July 16, 2025, Plaintiff Amaro through counsel, sent a letter ("First Demand Letter"), hereto attached as Exhibit 5, to Defendants demanding the revocation of the permanent ban from all TUHSD property.

42.    The First Demand Letter explained that the permanent banning of Ms. Amaro from all TUHSD property violated the First Amendment to the U.S. Constitution, Arizona Constitution's free expression provision, Ariz. Const., art. II § 6, and the Arizona Parents' Bill of Rights.; A.R.S. § 1-602. Exhibit 5.

43.    In response to Plaintiff's July 16, 2025, letter, Defendants amended the ban on Plaintiff coming onto district property through a July 29, 2025, letter ("Amended No-Trespass Letter"), hereto attached as Exhibit 6.

44.    This Amended No-Trespass Letter gave Plaintiff "approval to attend all school activities that directly involve your child … [including] picking up and dropping off at school as well as any extracurricular activities that your child chooses to participate in." *Id*.

45.    But "[a]ll other restrictions to remain off of all property of the District … still apply." Moreover, the response specifically stated that Plaintiff "may not bring your child to a Governing Board Meeting as an attempt to justify your presence as a school activity." *Id*.

46.    The Amended No-Trespass Letter restated that Plaintiff violated District Policy KFA though the "[u]se of profanity, disturbance of a presentation while exiting the gallery on April 22, 2025, and repeated profanity on May 13, 2025, from the podium while addressing the Governing Board." *Id*.

**Second Demand Letter**

47.    Plaintiff, again through counsel, sent another letter ("Second Demand letter") on August 19, 2025, to Defendants, hereto attached as Exhibit 7.

48.    The Second Demand letter again requested the lifting of the ban as it unlawfully infringes upon Plaintiff's constitutional rights because Plaintiff was

9

permanently banned by Defendants from TUHSD property entirely in retaliation for her protected speech and out of a desire to limit criticism of its actions by banning one of Defendants' most frequent critics. *Id*.

49. This Second Demand Letter proffered proof for this inescapable conclusion, including the fact that in responding to a public records request, Defendants admitted that it has no official policy that would prohibit books with profanity from being assigned to students or placed in school libraries because the District does not ban books. *Id.*; *See also* Exhibit 8.

50. Further, the Second Demand Letter pointed out that then School Board President Ms. Leezah Sun had herself, before she was board president, used profanities publicly, in a forum viewable by minors; specifically, on May 2, 2022, Ms. Sun stated on Twitter "Fuck the Supreme Court." Exhibit 9. This tweet was still available on Ms. Leezah Sun's public account.

**Defendants' Response to Second Demand Letter**

51. Defendant Calles responded to this Second Demand Letter directly over email. Exhibit 10.

52. In that email, Defendant Calles attempted to disclaim the earlier reasoning for Plaintiff's ban, arguing that Defendants banned Plaintiff because Plaintiff was disruptive, not for the profanity itself, and due to the Plaintiff not being "remorseful" about her actions.

53. At present, therefore, Plaintiff is permanently banned from all TUHSD property absent a specific event related to her child or permission from a school principal or the Superintendent.

**Injuries to Plaintiff**

54. Because of the District's ban, Plaintiff can never enter upon any TUHSD property unless it directly relates to her child. She cannot attend sporting events that take place on TUHSD property, including ones in which her extended family or the children of long-term family friends participate as she has done in the past. She cannot attend

10

events of private organizations that rent space from TUHSD including her niece's dance recital, which she has attended in the past, with a private dance troupe that rents space from TUHSD. Nor can she attend or participate in any meetings for public discussion of political or social relevance that may take place on TUHSD property.

55. If the District's ban was not in place, Plaintiff would, and still wishes to, enter District property for a variety of reasons, including attending sporting events in which her extended family or the children of long-term family friends participate, attending events of private organizations that rent space from TUHSD including her niece's dance recital, and attending meetings for public discussion of political or social relevance that may take place on TUHSD property, among other activities.

56. Defendants' permanent ban of Plaintiff violates the First Amendment because the Defendants have enforced a policy against Plaintiff and otherwise taken adverse action against Plaintiff because of her protected speech.

57. Defendants' permanent banning of Plaintiff also violated her right to due process as protected by the Fourteenth Amendment because it was imposed without any notice and opportunity to be heard, either before or after the institution of the ban.

### Declaratory and Injunctive Relief Allegations

58. An actual and substantial controversy exists between Plaintiff and Defendants as to their respective legal rights and duties. Plaintiff contends, pursuant to 42 U.S.C. § 1983, the Defendant District's policies and actions as described herein violate her rights to free speech and due process as protected by the First and Fourteenth Amendments.

59. Plaintiff is informed and believes, and on that basis alleges, that Defendants hold their actions as described herein to be lawful in all respects. Plaintiff is informed and believes, and on that basis alleges, that Defendants insist that they have authority to impose and to continue enforcing the permanent ban without any impartial hearing, required revaluation, or oversight from any entity.

60. Accordingly, declaratory relief is appropriate.

11

61. Due to Defendants' actions and policies, Plaintiff is permanently banned from TUHSD property, except for limited circumstances involving her child. This includes a ban on attending any Governing Board meetings, any sporting event, any play, or any other activity that is open to the public or for which a private entity rents space from Defendants.

62. Absent this ban, Plaintiff would attend meetings of the Defendant Governing Board and events on TUHSD property that are open to the public. The only reason she is not attending events or meetings is the ban.

63. If not permanently enjoined by the Court, Defendants will continue enforcing this ban against Plaintiff and continue applying a policy that allows Defendants to punish individuals for protected speech without an opportunity to be heard by a neutral arbitrator.

64. Plaintiff has no plain, speedy, and adequate remedy at law for these injuries.

65. Accordingly, injunctive relief is appropriate.

## CAUSES OF ACTION

### COUNT 1
**42 U.S.C. § 1983 First Amendment Retaliation**
**(Against All Defendants)**

66. Plaintiff incorporates and re-alleges each and every allegation contained in paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67. The First Amendment binds the state and local government through the Fourteenth Amendment. In all the following paragraphs, references to the First Amendment include the First Amendment as applied to states, localities and school districts through the Fourteenth Amendment.

68. The First Amendment protects the rights of individuals to engage in free speech. Laws that impermissibly encroach upon freedom of speech are unconstitutional.

69. The First Amendment protects freedom of speech, including vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. It

12

also protects the use of expressive profanity, even when the speaker is on government property.

70.    Plaintiff was engaged in critiquing government officials when she chose to use impassioned expletives which were designed to convey emotional as well as intellectual opposition to the Defendants' actions and policies.

71.    The First Amendment also prohibits government entities from taking adverse actions against individuals who engage in protected speech. Here, the Defendants' actions constitute retaliation for her exercise of the freedom of speech.

72.    Plaintiff was engaged in activity protected by the First Amendment when the District took the actions described herein (or immediately preceding those actions). The District imposed a substantial deprivation on her in reaction to, and to penalize or silence, her speech—a deprivation that would chill a person of ordinary firmness from engaging in that activity. Plaintiff's constitutionally protected speech was a substantial motivating factor in the Defendants' decision to take the retaliatory action.

73.    Defendant Calles used his authority, as empowered by Defendant District, to permanently ban Plaintiff from all TUHSD property because of Plaintiff's constitutionally protected activity, a punishment which would chill others from engaging in similar protected activity.

74.    The right not to suffer retaliation for free speech is clearly established. *See, e.g., Ballentine v. Tucker*, 28 F.4th 54 (9th Cir. 2022); *Duran v. City of Douglas,* 904 F.2d 1372 (9th Cir. 1990). It is also obvious that government entities and employees may not attempt to punish and intimidate a person for exercising her freedom of speech. Every reasonable government official would have had fair warning that doing so is unconstitutional because of precedent and the obvious nature of the protected activity. Consequently, Defendant Calles engaged in a harmful act against Plaintiff in violation of clearly established and obvious First Amendment law, as described herein.

13

75.     Plaintiff is informed and believes, and on that basis alleges that Defendant Calles' unconstitutional act was motivated by retaliatory animus and directly harmed Plaintiff by chilling her ability to exercise her First Amendment rights.

76.     Plaintiff is further informed and believes, and on that basis alleges that Defendant Governing Board's policies directly lead to her banning from school property as Board Policy KFA allows for individuals to be banned because of their speech.

77.     As a result of this conduct, Plaintiff has suffered and continues to suffer damage from the permanent ban from campus, a ban that would dissuade others from engaging in similarly impassioned critiques of the district, a ban that was at least substantially motivated by Plaintiff's protected speech.

**COUNT 2**
**As-Applied First Amendment Challenge to Policy KFA**
**(Against All Defendants)**

78.     Plaintiff incorporates and re-alleges each and every allegation contained in paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.     The First Amendment forbids the government from prohibiting the expression of an idea simply because society finds the idea itself offensive or disagreeable.

80.     Defendant School Board's Policy KFA prohibits any person from engaging in ""[a]ny conduct intended to obstruct, disrupt, or interfere with" a school's operations, "[p]hysical or verbal abuse or threat of harm to any person on property owned or controlled by the District," and "[u]se of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment." Exhibit 3.

81.     Policy KFA allows Defendants to ban individuals entirely because of their protected constitutional speech. As applied to Plaintiff, and described herein, it is unconstitutional.

82.     Policy KFA further provides that "[a]ny member of the general public considered by the Superintendent, or a person authorized by the Superintendent, to be in

14

violation of these rules shall be instructed to leave the property of the District," and that "[f]ailure to obey the instruction may subject the person to criminal proceedings pursuant to A.R.S. 13-2911 [for trespassing.]." *Id*.

83. Policy KFA allows Defendants to ban individuals, like Plaintiff, entirely because of that individual's speech.

84. Because Policy KFA allows the District to prohibit speech that it finds "offensive or inappropriate," it runs afoul of this principle.

85. By enforcing Policy KFA against Plaintiff, Defendants punished Plaintiff simply because Defendants found Plaintiff's speech to be "offensive or inappropriate." But the government cannot punish an adult at a school board meeting for engaging in speech the government may find "offensive."

86. Defendants invoked Policy KFA when banning Plaintiff from TUHSD property in perpetuity and the ban was a direct result of Plaintiff's speech which Defendants found to be offensive or inappropriate.

87. As a direct result of Defendants' application of Policy KFA to permanently ban Plaintiff because of Defendants' view that Plaintiff's speech was "offensive or inappropriate," Plaintiff continues to suffer an immediate and direct injury as she cannot exercise her constitutional rights. Plaintiff is informed and believes and, on that basis, alleges that Defendants contend their actions are lawful in all respects and Defendants will continue enforcing this policy in a manner that violates the First Amendment if not enjoined by this Court.

### COUNT 3
### 42 U.S.C. § 1983 No Trespass Order—Procedural Due Process
### (Against All Defendants)

88. Plaintiff incorporates and re-alleges each and every allegation contained in paragraphs 1 through 87 of this Complaint as if fully set forth herein.

89. The Due Process Clause of the United States Constitution prohibits the states from depriving persons of liberty without notice and an opportunity to be heard. What precise process is due in a given case requires a careful analysis of the importance

15

of the rights and the other interests at stake, but a person must at a minimum have an opportunity to challenge the factual or legal basis of a deprivation before a neutral tribunal.

90. Plaintiff received no individualized process whatsoever, either before or after the Order banning her from all TUHSD property in perpetuity. Thus, Plaintiff was deprived of any opportunity to challenge the ban from TUHSD property before a neutral decision maker. This has not been changed by any subsequent modifications of the initial ban as described herein.

91. The decision to impose the ban against Plaintiff entering TUHSD property was arbitrary.

92. These actions constitute violations of the Due Process Clause of the Fourteenth Amendment and without an injunction, Defendants will continue to enforce the ban in perpetuity without providing the constitutionally required process to Plaintiff to challenge the ban.

**REQUESTS FOR RELIEF**

A. A declaratory judgment by the Court that Defendants violated the First Amendment by permanently banning Plaintiff from all TUHSD property, except for any events or activities specifically with her child, because of her protected speech, as Defendants retaliated against Plaintiff for her protected speech;

B. A declaratory judgment by the Court that the Defendant Governing Board's Policy KFA violates the First Amendment as applied to Plaintiff in so far as it allowed Defendants to punish Plaintiff for speech protected by the First Amendment;

C. A declaratory judgment that the lack of any independent and neutral procedures either before or after the imposition of a permanent ban from all TUHSD property violates the Fourteenth Amendment;

D. An injunction prohibiting Defendant Governing Board and Defendant Superintendent in his official capacity and individual capacity from applying and

16

enforcing their policies to ban Plaintiff from TUHSD property because of her protected speech;

  E. An injunction prohibiting Defendants from enforcing their permanent ban on Plaintiff from TUHSD property;

  F. An injunction prohibiting Defendants from banning Plaintiff from TUHSD property because of Plaintiff's speech without any independent and neutral procedures either before or after the imposition of a ban from TUHSD property;

  G. An award of nominal damages in the amount of $1.00 for the violations of Plaintiff's constitutional rights;

  H. An award of attorney fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

  I. Such other legal and equitable relief the Court may deem appropriate and just.

  **RESPECTFULLY SUBMITTED** this 21st day of October 2025 by:

/s/ *Adam Shelton*
Jonathan Riches (025712)
Timothy Sandefur (033670)
Adam Shelton (038252)
**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**

*Attorneys for Plaintiff*

Case 2:25-cv-03919-JJT    Document 1    Filed 10/21/25    Page 18 of 38

1

**CB ©**
**SUPERINTENDENT**

The Board shall employ a Superintendent, who shall enforce the statutes and rules of the state of Arizona and the federal government, and the policies of the Governing Board of the District.

The administration of the school system in all aspects is the responsibility of the Superintendent, whose functions shall be carried out in accordance with the policies of the Board.

The Superintendent may establish regulations for the administration of the District that are in compliance with applicable statutes or regulations of the Arizona Administrative Code and the policies of the Governing Board.  These regulations are binding on the employees of this District and students in the schools.

Adopted:  date of Manual adoption

LEGAL REF.:
A.R.S.
15-503

**Exhibit 1**



| **ADMINISTRATIVE CENTER** | **GOVERNING BOARD** | **SUPERINTENDENT** |
|---|---|---|
| 9801 West Van Buren Street | Ms. Leezah Sun, President | Mr. Jeremy Calles |
| Tolleson, Arizona 85353 | Mr. Steven Chapman, Vice President | |
| (623) 478-4000 | Mr. Devin Del Palacio, Member | |
| (623) 936-5048 Fax | Dr. Elda Luna-Najera, Member | |
| Website: www.tuhsd.org | Mr. Miguel Ortega-Romero, Member | |

May 13, 2025

Jeremy Calles, Superintendent
Tolleson Union High School District No. 214
9801 West Van Buren Street
Tolleson, AZ 85353

Re:    NOTICE OF EXCLUSION FROM AND REQUIREMENT FOR
       PERMISSION TO ENTER THE PROPERTY OF TOLLESON UNION HIGH SCHOOL DISTRICT
       NO. 28

Dear Diann Amaro:

This is to advise you that as the Superintendent of the Tolleson Union High School District No. 214 ("District"), charged with the responsibility to maintain order on the property of the District, I have determined that you have disrupted and interfered with the Governing Board Meetings of the District, specifically you stormed out of the Governing Board room shouting profanities and slamming your hand against chairs in the presence of minors and while the Board was receiving a presentation which is in violation of the policies of the Tolleson Union High School District Governing Board, specifically District Policy KFA – Public Conduct on School Property.

You violated District Policy KFA – Public Conduct on School Property in the following way:

Use of profanity, disturbance of a presentation and assaulting District furniture

This is your final warning and one more incident will result in you being instructed to immediately leave and/or remain off of all property of the District, and to strictly comply at all times in the future with District Policy KFA – Public Conduct on School Property, to-wit, that you shall never come upon or remain upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District property.

This is further notice to you that a knowing violation of this order constitutes interference with or disruption of an educational institution in violation of both Arizona Revised Statutes Section 13-2911 and the District Policy KFA – Public Conduct on School Property.  Any violation of Arizona Revised Statutes Section 13-2911 will be immediately reported to appropriate law enforcement authorities for criminal prosecution.  Interference with or disruption of an educational institution is a Class 1 misdemeanor punishable by up to six months imprisonment and a fine of up to $2500.00.

Sincerely,

Jeremy Calles
Superintendent

*EXCELLENCE IN EVERY ENDEAVOR*

**Exhibit 2**

**KFA ©**
**PUBLIC CONDUCT ON**
**SCHOOL PROPERTY**

No person shall engage in conduct that may cause interference with or disruption of an educational institution. Interference with or disruption of an educational institution includes any act that might reasonably lead to the evacuation or closure of any property of the educational institution or the postponement, cancellation or suspension of any class or other school activity. For the purposes of this policy, an actual evacuation, closure, postponement, cancellation or suspension is not required for the act to be considered interference or disruption.

A person commits interference with or disruption of an educational institution by doing any of the following:

A. Intentionally, knowingly or recklessly interfering with or disruption of the normal operations of an educational institution by either:

1. Threatening to cause physical injury to any employee or student of an educational institution or any person on the property of an educational institution.

2. Threatening to cause damage to the District, the property of the District, or the property of any person attending the District.

B. Intentionally or knowingly entering or remaining on the property of an educational institution for the purpose of interfering with or denying lawful use of the property to others.

C. Intentionally or knowingly refusing to obey a lawful order given by the Superintendent or a person designated to maintain order.

The above identified acts need not be directed at a specific individual, the District, or specific property of the District to constitute a violation of this policy.

Restitution for any financial loss caused by a violation of the policy may be required. Furthermore, an individual who interferes with or disrupts an educational institution is subject to misdemeanor or felony charges as provided in A.R.S. 13-2911.

A person may also interfere with or disrupt the District function by committing any of the following:

**Exhibit 3**

A.  Any conduct intended to obstruct, disrupt, or interfere with teaching, research, service, administrative, or disciplinary functions or any activity sponsored or approved by the Board.

B.  Physical or verbal abuse or threat of harm to any person on property owned or controlled by the District or at supervised functions sponsored by the District.

C.  Forceful or unauthorized entry to or occupation of District facilities, including both buildings and grounds.

D.  Illicit use, possession, distribution, or sale of tobacco, alcohol, or drugs, other controlled substances, or other illegal contraband on District property or at school-sponsored functions.

E.  Use of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment.

F.  Failure to comply with the lawful directions of District officials or of District security officers or other law enforcement officers acting in performance of their duties, and failure to identify oneself to such officials or officers when lawfully requested to do so.

G.  Knowing violation of a District rule and regulation.  Proof that an alleged violator has a reasonable opportunity to become aware of such rules and regulations shall be sufficient proof that the violation was done knowingly.

H.  Any conduct constituting an infraction of any federal, state, or city law or policy or regulation of the Board.

I.  Carrying or possessing a weapon on school grounds unless the individual is a peace officer or has obtained specific authorization from the appropriate school administrator.

**Additional Requirements
of the General Public**

The definition of *general public* is anyone who does not come under the definition of student, faculty member, staff member, or employee.

A.  No person shall visit or audit a classroom or other school activity, nor shall any person come upon or remain upon school premises, without approval by the principal or the principal's authorized representative. Nor shall any person conduct or attempt to conduct any activity on school premises without prior approval by the Superintendent or the Superintendent's authorized representative.

B.  Any member of the general public considered by the Superintendent, or a person authorized by the Superintendent, to be in violation of these

rules shall be instructed to leave the property of the District.  Failure to obey the instruction may subject the person to criminal proceedings pursuant to A.R.S. 13-2911 and to any other applicable civil or criminal proceedings, or to tribal ordinance.

C.  Persons attending special functions shall confine themselves to the specific part of the facility assigned in the permit.

D.  Persons who engage in disorderly conduct of any kind may be subject to removal and exclusion from the facility.

E.  The use of facilities shall be granted only for legitimate purposes.  Therefore, the permit holder shall assume full responsibility for any unlawful act committed during the exercise of the permit.

F.  No person shall possess or engage in the use of medical marijuana on District property, at a District event, or in a District vehicle.

Adopted:  April 23, 2013

LEGAL REF.:
A.R.S.
13-2905
13-2911
13-3102
15-341
15-507
36-2801 *et seq.*
36-2802

CROSS REF.:
GBEB - Staff Conduct
GCQF - Discipline, Suspension, and Dismissal of Professional Staff Members
GDQD - Discipline, Suspension, and Dismissal of Support Staff Members
JIC - Student Conduct
JK - Student Discipline
KI - Visitors to Schools



| **ADMINISTRATIVE CENTER** | **GOVERNING BOARD** | **SUPERINTENDENT** |
|---|---|---|
| 9801 West Van Buren Street | Ms. Leezah Sun, President | Mr. Jeremy Calles |
| Tolleson, Arizona 85353 | Mr. Steven Chapman, Vice President | |
| (623) 478-4000 | Mr. Devin Del Palacio, Member | |
| (623) 936-5048 Fax | Dr. Elda Luna-Najera, Member | |
| Website: www.tuhsd.org | Mr. Miguel Ortega-Romero, Member | |

May 21, 2025

Jeremy Calles, Superintendent
Tolleson Union High School District No. 214
9801 West Van Buren Street
Tolleson, AZ 85353

Re:    NOTICE OF EXCLUSION FROM AND REQUIREMENT FOR
PERMISSION TO ENTER THE PROPERTY OF TOLLESON UNION HIGH SCHOOL DISTRICT
NO. 28

Dear Diann Amaro:

This is to advise you that as the Superintendent of the Tolleson Union High School District No. 214 ("District"), charged with the responsibility to maintain order on the property of the District, I have determined that you have disrupted and interfered with the Governing Board Meetings of the District, specifically you were shouting profanities from the podium despite the warning that was issued to you previously on May 13. You are in violation of the policies of the Tolleson Union High School District Governing Board, specifically District Policy KFA – Public Conduct on School Property.

You violated District Policy KFA – Public Conduct on School Property in the following way:

Use of profanity, disturbance of a presentation and assaulting District furniture on a prior notice and repeated profanity on May 13, 2025.

You are instructed to immediately leave and/or remain off of all property of the District, and to strictly comply at all times in the future with District Policy KFA – Public Conduct on School Property, to-wit, that you shall never come upon or remain upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District property.

Your continued violation of this order constitutes interference with or disruption of an educational institution in violation of both Arizona Revised Statutes Section 13-2911 and the District Policy KFA – Public Conduct on School Property. Any violation of Arizona Revised Statutes Section 13-2911 will be immediately reported to appropriate law enforcement authorities for criminal prosecution. Interference with or disruption of an educational institution is a Class 1 misdemeanor punishable by up to six months imprisonment and a fine of up to $2500.00.

Sincerely,

Jeremy Calles
Superintendent

—— *EXCELLENCE IN EVERY ENDEAVOR* ——

**Exhibit 4**



GOLDWATER
INSTITUTE

July 16, 2025

*Via E-mail & U.S. Mail*

Jeremy Calles
Superintendent
Tolleson Union High School District No. 214
9801 West Van Buren Street
Tolleson, AZ 85353
jeremy.calles@tuhsd.org

     Subj:   Diann Amaro No-Trespass Letter

Dear Superintendent Calles:

     We represent Diann Amaro, a mother of a Tolleson Union High School District ("TUHSD" or "District") student and a community leader who advocates for accountability, including spending accountability, within TUHSD. On May 21, 2025, your office sent Ms. Amaro a document entitled "Notice of Exclusion From and Requirement for Permission to Enter the Property of Tolleson Union High School District No. 28" ("Letter" or "No-Trespass Order"). A copy of this Letter is attached as Exhibit 1.

     We understand that you sent this Letter after Ms. Amaro uttered a profanity at the May 13, 2025, Governing Board meeting. In your Letter, you accused Ms. Amaro of having "disrupted or interfered with the Governing Board Meetings of the District" in violation of District Policy KFA—Public Conduct on School Property.[1] The punishment you levied against Ms. Amaro was not because she disturbed or interfered with meetings (which is a dubious characterization of the events) but because she engaged in direct and harsh criticism of the Governing Board and of you as the Superintendent.

     Your Letter states that Ms. Amaro "shall never come upon or remain upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District

---

[1] The Ninth Circuit recently held that a reasonable jury could conclude that Policy KFA of the Marana Unified School District—which is identical to Policy KFA here—allows for the punishment of individuals based solely on their speech. *Hartzell v. Marana Unified School District*, 130 F.4th 722, 737 (9th Cir. 2025).

**Exhibit 5**

Superintendent Jeremy Calles
July 16, 2025
Page **2** of **4**

property." Exhibit 1. The Letter threatens that any violation of its terms would lead to a report to law enforcement for prosecution. In short, you have banned Ms. Amaro from all district property, including from attending events for her child and picking her child up from school. The ban is based on the content of Ms. Amaro's speech, and appears to be an attempt to prevent public criticism of you and the Board. The Letter was delivered to Ms. Amaro the same day she was scheduled to speak at a rally outside the school district offices—a rally held for the purpose of calling attention to TUHSD spending.

The banning of Ms. Amaro from all TUHSD property violates the First Amendment to the U.S. Constitution, Arizona Constitution's free expression provision, and the Arizona Parents' Bill of Rights. Ariz. Const., art. II § 6; A.R.S. 1-602.

The First Amendment guarantees the right of all individuals to speak freely without government restraint subject to certain narrow exceptions. In *Cohen v. California*, 403 U.S. 15 (1971), the Supreme Court specifically held that wearing a jacket in a courthouse that read "F*** the Draft" when women and children were present was protected by the First Amendment. The Court in that case overturned a conviction under California Penal Code for maliciously and willfully disturbing the peace. The Court explained "while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man's vulgarity is another's lyric." *Id*. at 25. That's why "governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual." *Id*.

The Arizona Constitution provides *broader* protection for free expression than the First Amendment. Consequently, "a violation of First Amendment principles 'necessarily implies' a violation of the broader protections of article 2, section 6 of the Arizona Constitution." *Brush & Nib Studio, LC v. City of Phoenix*, 247 Ariz. 269, 282 ¶ 47 (2019). Thus, while TUHSD's actions in this matter violate the plain requirements of the First Amendment, they also necessarily violate the state constitution.

Like a courthouse in *Cohen*, a school board meeting is a public setting open to the public to conduct public business. Courts across the country have held that banning profanity at school board meetings (or banning individuals from school board meetings because of profanity) violates the Constitution. *See, e.g.*, *Acosta v. City of Costa Mesa*, 718 F.3d 800, 813 (9th Cir. 2013) ("§ 2–61 prohibits the making of 'personal, impertinent, profane, insolent or slanderous remarks.' That, without limitation, is an unconstitutional prohibition on speech."); *Moms for Liberty - Brevard Cnty. v. Brevard Public Schools*, 118 F.4th 1324, 1339 (11th Cir. 2024

While narrow restrictions on public meeting attendance may be allowed in rare cases, there's no evidence in this case that Ms. Amaro actually disrupted any Governing Board meeting—let alone in a way that would justify banning her from *all* district property.

More importantly, Ms. Amaro engaged in protected speech under both the First Amendment and the Arizona Constitution. And even if her comments could be viewed as disruptive—they were not—the No-Trespass Order is both overbroad and unreasonable.

Superintendent Jeremy Calles
July 16, 2025
Page **3** of **4**

The No-Trespass Order also violates the Arizona Parents' Bill of Rights. A.R.S. § 1-602. Ms. Amaro is a parent to an incoming senior in TUHSD. Under the No-Trespass Order, she is now prohibited from picking up her child from school, dropping off her child at school, or attending any school events for her child unless she receives the permission of the Superintendent or school principal. This directly interferes with her ability to direct the education of her child as protected by A.R.S. § 1-602.

Put simply, a parent cannot meaningfully direct her minor child's education if she is barred from regular contact with school personnel and activities. By banning Ms. Amaro from all district property, you've limited her ability to engage with her child's education and to observe the school environment firsthand.

The Arizona Parents' Bill of Rights empowers parents to sue government officials for "any violation" of their statutory rights or for any action that "interfere[s] with or usurp[s] the fundamental right of parents to direct the upbringing, education, health care and mental health of their children." A.R.S. § 1-602(E).

To justify such interference, the government bears the burden of proving both:

1. That the interference or usurpation is essential to accomplish a compelling government interest of the highest order, as long recognized in the history and traditions of this state in the operation of its regulatory powers; and 2. That the method of interference or usurpation used by the government is narrowly tailored and is not otherwise served by a less restrictive means." A.R.S. § 1-602(F).

If the government can't meet that burden, the court may award declaratory or injunctive relief, damages, and attorney fees. A.R.S. § 1-602(G).

Here, the District's actions don't come close to meeting that standard. The alleged misconduct was limited to two school Governing Board meetings. There is no claim of any issue at other school events. Banning her from all District property is, therefore, not necessary to achieve a compelling government interest and is not narrowly tailored or the least restrictive means. The ban violates Ms. Amaro's parental rights under Arizona law.

To prevent ongoing and future violations of Ms. Amaro's constitutional rights and the possibility of a lawsuit seeking to enforce those rights, we request the following: that the District immediately and completely revoke the Letter dated May 21, 2025. If the No-Trespass Order is not rescinded within two weeks, we will pursue further legal action.

Our staff is available at any time to discuss the constitutional issues raised in this matter.

We appreciate your prompt consideration and look forward to receiving confirmation that the TUHSD Governing Board has taken steps to bring its actions into compliance with the Arizona

Superintendent Jeremy Calles
July 16, 2025
Page **4** of **4**

Constitution and the Arizona Parents' Bill of Rights.

Should you have any questions regarding this matter, please do not hesitate to contact me directly.

Regards,

Adam Shelton
Staff Attorney
Scharf-Norton Center for Constitutional Litigation
at the Goldwater Institute

cc via email only:

Ms. Leezah Sun
President
Leezah.Sun@tuhsd.org

Mr. Steven Chapman
Vice President
steven.chapman@tuhsd.org

Mr. Devin Del Palacio
Board Member
devin.delpalacio@tuhsd.org

Dr. Elda Luna-Najera
Board Member
elda.luna-najera@tuhsd.org

Mr. Miguel A. Ortega-Romero
Board Member
Miguel.Ortegaromero@tuhsd.org

Lupita Goodman
Executive Assistant to the Superintendent and Governing Board
lupita.goodman@tuhsd.org



**ADMINISTRATIVE CENTER**

9801 West Van Buren Street
Tolleson, Arizona 85353
(623) 478-4000
(623) 936-5048 Fax
Website: www.tuhsd.org

**GOVERNING BOARD**

Ms. Leezah Sun, President
Mr. Steven Chapman, Vice President
Mr. Devin Del Palacio, Member
Dr. Elda Luna-Najera, Member
Mr. Miguel Ortega-Romero, Member

**SUPERINTENDENT**

Mr. Jeremy Calles

July 29, 2025

Jeremy Calles, Superintendent
Tolleson Union High School District No. 214
9801 West Van Buren Street
Tolleson, AZ 85353

  Re:  NOTICE OF EXCLUSION FROM AND REQUIREMENT FOR
      PERMISSION TO ENTER THE PROPERTY OF TOLLESON UNION HIGH SCHOOL DISTRICT
      NO. 28

Dear Diann Amaro:

This is to advise you that as the Superintendent of the Tolleson Union High School District No. 214 ("District"), charged with the responsibility to maintain order on the property of the District. You were previously issued an exclusion order due to your repeated offenses of the policies of the Tolleson Union High School District Governing Board, specifically District Policy KFA – Public Conduct on School Property.

You violated District Policy KFA – Public Conduct on School Property in the following way:

Use of profanity, disturbance of a presentation while exiting the gallery on April 22, 2025, and repeated profanity on May 13, 2025, from the podium while addressing the Governing Board.

You are hereby given approval to attend all school activities that directly involve your child. This includes picking up and dropping off at school as well as any extracurricular activities that your child chooses to participate in. All other restrictions to remain off of all property of the District, and to strictly comply at all times in the future with District Policy KFA – Public Conduct on School Property, to-wit, that you shall never come upon or remain upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District property still apply. You may not bring your child to a Governing Board Meeting as an attempt to justify your presence as a school activity. Any questions you have pertaining to this notice can be directed to my office.

Your continued violation of this order constitutes interference with or disruption of an educational institution in violation of both Arizona Revised Statutes Section 13-2911 and the District Policy KFA – Public Conduct on School Property. Any violation of Arizona Revised Statutes Section 13-2911 will be immediately reported to appropriate law enforcement authorities for criminal prosecution. Interference with or disruption of an educational institution is a Class 1 misdemeanor punishable by up to six months imprisonment and a fine of up to $2,500.00.

Sincerely,

Jeremy Calles
Superintendent

— *EXCELLENCE IN EVERY ENDEAVOR* —

# Exhibit 6



August 19, 2025

***Via E-mail & U.S. Mail***

Jeremy Calles
Superintendent
Tolleson Union High School District No. 214
9801 West Van Buren Street
Tolleson, AZ 85353
jeremy.calles@tuhsd.org

> Subj:   Diann Amaro No-Trespass (Exclusion From and Requirements for Permission)
> Letter

Dear Superintendent Calles:

We received your letter, dated July 29, 2025 ("Response Letter"), in which you, as Superintendent, granted Ms. Amaro "approval to attend all school activities that directly involve" her child. A copy of this Response Letter is attached as Exhibit 1.

Yet, under its terms Ms. Amaro is still prohibited from "com[ing] upon or remain[ing] upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District property."[1] *See* Exclusion From and Requirement for Permission Order, attached as Exhibit 2.

Even as amended by your Response Letter, your "Exclusion From and Requirement for Permission Order" unlawfully infringes upon Ms. Amaro's Constitutional rights.

As previously noted in our letter of July 16, 2025 (attached as Exhibit 3), the First Amendment protects every individual's right to speak freely, subject only to narrow exceptions. In *Cohen v. California*, 403 U.S. 15 (1971), the U.S. Supreme Court made the point unmistakably: wearing a jacket in a courthouse emblazoned with "F*** the Draft" was protected speech. The Court in that case overturned a conviction under California Penal Code for maliciously and willfully disturbing the peace. The Court explained "while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true

---

[1] We assume that this restriction also applies to the property that was central to Lease-Lease back agreement with the Isacc School District and the property referred in the Lease Option Agreement with Dominium Acquisition for "affordable housing."

Goldwater Institute | 500 East Coronado Road, Phoenix, Arizona 85004
Phone (602) 462-5000 | Fax (602) 256-7045

**Exhibit 7**

Superintendent Jeremy Calles
August 19, 2025
Page 2 of 5

that one man's vulgarity is another's lyric." *Id*. at 25. The Constitution, the Court emphasized, "leaves matters of taste and style so largely to the individual," and government officials cannot make "principled distinctions" in this area. *Id*.

The Arizona Constitution provides even *broader* protection for free expression than the First Amendment. *See Brush & Nib Studio, LC v. City of Phoenix*, 247 Ariz. 269, 282 ¶ 47 (2019). ("[A] violation of First Amendment principles 'necessarily implies' a violation of the broader protections of article 2, section 6 of the Arizona Constitution."). TUHSD's actions, therefore, violate not only the U.S. Constitution but also the Arizona Constitution.

Like a courthouse in *Cohen*, a school board meeting is a public setting, where citizens gather to conduct public business. Courts nationwide have held that banning profanity at school board meetings (or punishing speakers who use profanity) violates the Constitution. *See, e.g.*, *Acosta v. City of Costa Mesa*, 718 F.3d 800, 813 (9th Cir. 2013) ("§ 2–61 prohibits the making of 'personal, impertinent, profane, insolent or slanderous remarks.' That, without limitation, is an unconstitutional prohibition on speech."); *Moms for Liberty - Brevard Cnty. v. Brevard Public Schools*, 118 F.4th 1324, 1339 (11th Cir. 2024). In fact, school boards have been ordered to pay damages and attorneys' fees[2] in such cases—including nearly $150,000 in damages after a father was banned from speaking at board meetings for nearly two years because his comments were loud and strident.[3]

The Ninth Circuit recently confirmed this principle in *Hartzell v. Marana Unified School District*, 130 F.4th 722, 737 (9th Cir. 2025). In that case, the court held that the very policy you relied upon in banning Ms. Amaro from District Property—District Policy KFA Public Conduct on School Property— is likely unconstitutional because it allows individuals to be banned solely for their speech.

The record here shows that Ms. Amaro was banned from district property for exactly that reason.

Two additional facts show a pattern of uneven and arbitrary speech enforcement by the district. First, in response to a public records request by the Goldwater Institute, Tolleson admitted that it has no official policy that would prohibit books with profanity from being assigned to students or placed in school libraries. Second, current School Board President Ms. Leezah Sun has

---

[2] *See* Watrobski, *Georgia School District Forced to Pay More Than $100k After Censoring Parents at Board Meeting*, 12 News (Feb. 24, 2023), https://cbs12.com/news/nation-world/georgia-school-district-forced-to-pay-more-than-100k-after-censoring-parents-at-board-meeting.

[3] *See Parent Wins $147k Award from Vermont School District Over Access,* Bennington Banner (Jan. 6, 2015), https://www.benningtonbanner.com/archives/parent-wins-147k-award-from-vermont-school-district-over-access/article_e8b104ae-c120-5e49-901b-c846003e181d.html.

Superintendent Jeremy Calles
August 19, 2025
Page 3 of 5

herself used profanities publicly, in a forum viewable by minors.[4] Exhibit 4. Specifically, on May 2, 2022, Ms. Sun stated on Twitter "F*** the Supreme Court" using uncensored language.

As such, it strains credulity for TUHSD to claim authority to ban Ms. Amaro from *all district property in perpetuity* over the utterance of words that TUHSD admits can appear in books assigned by teachers, available in its own libraries, and even used publicly by its own Board President on social media.

By imposing this ban, you have deprived Ms. Amaro of her constitutional rights. Under the ban, she is prohibited from attending TUHSD Governing Board meetings, from speaking at those meetings, and from even attending programs at TUHSD at which her nieces or nephews may be performing. This wholesale exclusion is unlawful, particularly as there is no evidence Ms. Amaro has disrupted a Board meeting, and certainly no evidence she has disrupted any other school function.

Even if her comments could be viewed as disruptive—which they were not—the "Exclusion From and Requirement for Permission Order" is both overbroad and unreasonable, even as amended by your July 29, 2025, letter, as it included a district-wide ban and was not tailored to her alleged misconduct.

To prevent ongoing and future violations of Ms. Amaro's constitutional rights—and to avoid litigation to enforce those rights—we request that the District immediately and completely rescind the "Exclusion From and Requirement for Permission Order." If this unconstitutional order is not immediately revoked, we will pursue appropriate legal remedies.

Our staff is available at any time to discuss the constitutional issues raised in this matter.

We appreciate your prompt consideration and look forward to receiving confirmation that the TUHSD Governing Board has taken actions to bring its conduct into compliance with the U.S. Constitution and the Arizona Constitution.

Should you have any questions regarding this matter, please do not hesitate to contact me directly.

Regards,

Adam Shelton
Staff Attorney
Scharf-Norton Center for Constitutional Litigation
at the Goldwater Institute

---

[4] Rep. Leezah Sun LD22 (@Sun4AZ), X (May 2, 2022), https://x.com/Sun4AZ/status/1521355862123589634.

Superintendent Jeremy Calles
August 19, 2025
Page 4 of 5

cc via email only:

Ms. Leezah Sun
President
Leezah.Sun@tuhsd.org

Mr. Steven Chapman
Vice President
steven.chapman@tuhsd.org

Mr. Devin Del Palacio
Board Member
devin.delpalacio@tuhsd.org

Dr. Elda Luna-Najera
Board Member
elda.luna-najera@tuhsd.org

Mr. Miguel A. Ortega-Romero
Board Member
Miguel.Ortegaromero@tuhsd.org

Lupita Goodman
Executive Assistant to the Superintendent and Governing Board
lupita.goodman@tuhsd.org

**Adam Shelton**

---

| | |
|---|---|
| **From:** | Public Records <publicrecords@tuhsd.org> |
| **Sent:** | Friday, August 22, 2025 3:42 PM |
| **To:** | Adam Shelton |
| **Subject:** | Re: Response to public records request dated 7/16/25 |

Mr. Shelton,

I wanted to provide some clarification regarding this request: "Any District policy that would prohibit books with profane language from being assigned by teachers for any class or prohibit books with profane language in a TUHSD school library."

The reason is that no such records exist. We do not ban books.

Thank you,

Public Records
Tolleson Union High School District
9801 W. Van Buren Street
Tolleson, AZ 85353

---

**From:** Adam Shelton <ashelton@goldwaterinstitute.org>
**Sent:** Wednesday, August 13, 2025 8:57 AM
**To:** Public Records <publicrecords@tuhsd.org>
**Cc:** Catherine Ryland <CRyland@goldwaterinstitute.org>
**Subject:** RE: Response to public records request dated 7/16/25

**CAUTION: [EXTERNAL EMAIL]** *This email originated from outside of TUHSD. Do not click links, open attachments, or reply unless you recognize the sender and know the content is safe.*

Good morning,

Thank you for your response.

We agree to pay the $5 fee. Is there anyone specific we should route the payment to?

For the sake of clarity, is TUHSD refusing to send the records electronically? If so, the address the records should be mailed to is: 500 E Coronado Rd, Phoenix, AZ 85004. Please send them to my attention and promptly provide an updated cost so we may "remit payment."

Further, the use of the phrase "legally disclosable public records" raises the question as to whether there are public records located that you have deemed not "legally disclosable." If so, please provide a privilege log describing the document and announcing which of the exemptions to disclosure is being raised to overcome the presumption in favor of production.

1

# Exhibit 8

Adam Shelton
Staff Attorney
Goldwater Institute | www.GoldwaterInstitute.org | 602-462-5000

CONFIDENTIALITY NOTICE: The information contained in this message is privileged and confidential. It is intended only to be read by the individual or entity named above or their designee. Any distribution of this message by any person who is not the intended recipient is strictly prohibited. If you have received this message in error, do not read it. Please immediately notify the sender and delete it. Thank you.

---

**From:** Public Records <publicrecords@tuhsd.org>
**Sent:** Tuesday, August 12, 2025 3:38 PM
**To:** Adam Shelton <ashelton@goldwaterinstitute.org>
**Subject:** Response to public records request dated 7/16/25

This email is in response to the following public records request dated 7/16/2025

1. All letters or documents sent by any official or employee of Tolleson Union High School District ("the District"), from August 1, 2024 through the date of this request, to any person that prohibits any person from entering the property.
2. All letters or documents sent to any person by any official or employee of the District invoking either District Policy KFA — Public Conduct on School Property or A.R.S. 13-2911 from August 1, 2024 through the date of this request.
3. Any record regarding any person removed from a District event or from District property, including a sporting event, due to the use of profane language from August 1, 2024 through the date of this request.
4. Any District policy that would prohibit books with profane language from being assigned by teachers for any class or prohibit books with profane language in a TUHSD school library.

After a duly diligent search, the District has prepared 5 pages of legally disclosable public records within the scope of your request to fulfill items 1-3. Please remit payment of the required copying fees in the amount of $5 to the District Office. If you wish to have the records mailed to you, please provide an appropriate mailing address so that proper postage costs can be calculated. Please note the District will not release any legally disclosable public records until all required copying and postage fees are paid.

To answer your fourth request, there are no legally disclosable public records within the scope of your request.

The district has fulfilled its obligations with regards to this request and considers the matter now closed.

We look forward to your response in regard to items 1-3.

Thank you.



**Rep. Leezah Sun LD22**
@Sun4AZ

Fuck the Supreme Court. #RoevWade

10:07 PM · May 2, 2022

4     1

Post your reply                    Reply

**Exhibit 9**

**Adam Shelton**

---

| | |
|---|---|
| **From:** | Jeremy Calles <Jeremy.Calles@tuhsd.org> |
| **Sent:** | Wednesday, August 20, 2025 2:06 PM |
| **To:** | Adam Shelton |
| **Cc:** | Kris Schlott; Lupita Goodman |
| **Subject:** | Fw: Diann Amaro No-Trespass (Exclusion From and Requirements for Permission) Letter |
| **Attachments:** | TUHSD Follow Up Demand Letter.pdf |

Mr. Shelton,

I understand that you are trying to purely focus on the use of profanity as the sole reason for why Ms. Amaro is no longer permitted on District property. You do not need to send me any pictures of how you take great pride in being the one who contributes the most quarters to the swear jar for me to understand your viewpoint on how profanity is perfectly acceptable in a professional setting. The issue at hand is whether or not Ms. Amaro's actions were "disruptive". On the video, you can clearly see that the presenter and everyone else in the room comes to a stop to listen to Ms. Amaro's rant including the 7-year-old son of our Principal who was so excited that night to see his dad welcomed to the District. Again, this could be perfectly acceptable behavior according to your point of view, but we are fortunate that people before us have planned for situations when people can view a situation differently. They did so by assigning a decision maker, who in this case is the chief administrative officer of the educational institution. That role, as of this moment, for the Tolleson Union High School District, is assigned to me. It is my, reasonable belief, that if you begin shouting obscenities from the back of the room and our presenter, along with everyone else in the room, stops what they are doing to hear what you have to say then you have in fact disrupted the lawful use of our facility. Ms. Amaro has issued no apology for her behavior and has made no commitment to behave better, if given a chance to return. Instead, she jokes and wears her expulsion like a badge of honor at JLAC smiling while she states, "I'm the banned one". If you want me to entertain the possibility of permitting Ms. Amaro back onto District property then you would have a far greater chance of being successful by convincing me that she feels remorseful about her actions than you would by threatening me with a lawsuit. If your stance is going to remain unchanged then you can file your lawsuit, and we can continue this conversation in court.

**Jeremy I. Calles**
Superintendent
· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·
Tolleson Union High School District | 623.478.4000 | www.tuhsd.org

CONFIDENTIALITY NOTICE: *This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, copy, use, disclosure, or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

---

**From:** Kris Schlott <kschlott@goldwaterinstitute.org>
**Sent:** Tuesday, August 19, 2025 1:22 PM
**To:** Jeremy Calles <Jeremy.Calles@tuhsd.org>
**Cc:** Leezah Sun <Leezah.Sun@tuhsd.org>; Steven Chapman <steven.chapman@tuhsd.org>; Devin Del Palacio <Devin.DelPalacio@tuhsd.org>; Elda Luna-Najera <elda.luna-najera@tuhsd.org>; Miguel Ortega Romero <Miguel.Ortegaromero@tuhsd.org>; Lupita Goodman <Lupita.Goodman@tuhsd.org>; Adam Shelton <ashelton@goldwaterinstitute.org>

**Exhibit 10**

**Subject:** Diann Amaro No-Trespass (Exclusion From and Requirements for Permission) Letter

CAUTION: [EXTERNAL EMAIL] *This email originated from outside of TUHSD. Do not click links, open attachments, or reply unless you recognize the sender and know the content is safe.*

Dear Superintendent Calles:

Please see the attached letter from Adam Shelton.

Sincerely,

**Kris Schlott**
**Paralegal**
Goldwater Institute | www.GoldwaterInstitute.org | 602-462-5000

CONFIDENTIALITY NOTICE: The information contained in this message is privileged and confidential. It is intended only to be read by the individual or entity named above or their designee. Any distribution of this message by any person who is not the intended recipient is strictly prohibited. If you have received this message in error, do not read it. Please immediately notify the sender and delete it. Thank you.