**CANTELME & BROWN, P.L.C.**

A Professional Liability Company
2020 S. McClintock Drive, Suite 109
Tempe, Arizona 85282
Tel (602) 200-0104   Fax (602) 200-0106
david@cb-attorneys.com /aaron@cb-attorneys.com
David J. Cantelme, Bar No. 006313
D. Aaron Brown, Bar No. 022133
*Attorneys for Defendants*
*Tolleson Union High School District and*
*Jeremy Calles*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Diann Amaro, | No. 25-cv-03919-PHX-JJT |
| Plaintiff, | |
| v. | **DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FOR RELIEF** |
| Tolleson Union High School District; and Jeremy Calles in his individual capacity and in his official capacity as Superintendent of Tolleson Union High School District, | **Oral Argument Requested** |
| Defendants. | |

Pursuant to Rule 12(b)(6), F.R.Civ.P., Defendants Tolleson Union High School District ("District") and Superintendent Jeremy Calles move to dismiss the action filed against them by Plaintiff Diann Amaro ("Amaro"), and all claims for relief alleged in the complaint, for failure to state a valid claim for relief.  Using the labels set forth in the complaint, but without conceding their validity or accuracy, the complaint alleges three claims for relief against the District, all based on 42 U.S.C. § 1983: 1) First Amendment Retaliation, 2) As-Applied First Amendment Challenge to Policy KFA, and 3) No Trespass Order – Procedural Due Process.  The first two claims for relief fail, because the First Amendment does not allow a person to disrupt a school board meeting by a

combination of shouted profanity, shoving District furniture around, and attempting to incite the audience into joining the disturbance. The First Amendment protects speech. It does not protect disruptive conduct, which A.R.S. § 13-2911(A) makes illegal. The District's letters to Amaro, attached as exhibits to the complaint and quoted extensively therein, document such disturbances. The Court can consider the letters' contents without turning this motion to dismiss into a motion for summary judgment.[1]

The third claim for relief alleges that, by notice dated May 21, 2025, ("Notice") the District required Amaro to get approval from the Superintendent or a school principal before entering or remaining on District property. The Notice is attached as Exhibit 4 to the complaint. The Court can consider the Notice's contents as well, without converting the motion to a motion for summary judgment.   Under A.R.S. § 13-2911(D), Amaro's disturbance of two Governing Board meetings, and her resulting violation of District Policy KFA, warranted the District's limitation of Amaro's access to District property and events.  Amaro had no liberty interest or property rights to enter District property to be vindicated by the due process clause, and the limitation (but not denial) of access is narrowly tailored.  Thus, the Notice never violated the 14th Amendment, and this claim likewise should be dismissed for failure to state a claim.

Finally, the Superintendent further moves to dismiss under Rule 12(b)(6) for failure to state a claim based on the defense of qualified immunity, which may be raised properly in a motion to dismiss.[2]  The Superintendent is entitled to the defense because he violated no clearly established constitutional right belonging to Amaro.  Specifically,

---

[1] *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).
[2] *Seth Birt v. City of Peoria*, No. CV-25-01848-PHX-JJT, 2025 WL 3677476, at ** 5-7 (D.Ariz., Dec. 18, 2025).

she had no constitutional right to disturb Governing Board meetings in violation of A.R.S. § 13-2911, and alternatively, if she had such a right, it was not clearly established.

A certification under LRCiv 12.1(c) accompanies this motion. This motion is based on and supported by the accompanying memorandum of points and authorities, which is adopted herein by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

### RULE 12(b)(6) LEGAL STANDARD

This Court recently stated the standard for proceeding under Rule 12(b)(6) as follows:

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[ ] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation modified). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may

3

proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

*Birt*, *supra*, at ** 3-4.

**ANALYSIS**

**1.    Introduction.**

This action stems from Amaro's disturbance of two meetings of the District Governing Board, one held on April 22, 2025, and the other on May 13, 2025. District Policy KFA, adopted by the Governing Board, governs conduct at a Governing Board meeting. Amaro attached a copy of the policy as Exhibit 3 to the complaint.

By letter dated May 13, 2025, (Exhibit 2 to the complaint), the School District warned Amaro against repeating the disturbance of the Governing Board meeting she caused at the April 22 meeting: "[S]pecifically you stormed out of the Governing Board room shouting profanities and slamming your hand against chairs in the presence of minors and while the Governing Board was receiving a presentation . . ."  The May 13 letter further advised Amaro that it was her "final warning" and that "one more incident will result in you being instructed to immediately leave and/or remain off of all property of the District . . ."  The letter is likewise attached as an exhibit to the complaint, and the Court can consider its contents in a motion to dismiss.  *Ritchie*, 342 F.3d at 907-08.

Despite the warning, Amaro disrupted the May 13 meeting by the use of profanity, threatening words and gestures, and an attempt to incite the audience into disruptive conduct, all as set forth in the District's Notice of Exclusion from and Requirement for Permission to Enter the Property of Tolleson Union High School District No.28, dated May 21, 2025 (Exhibit 4 to the complaint.) Accordingly, the May 21 Notice instructed Amaro:

You are instructed to immediately leave and/or remain off of all property of the District, and to strictly comply at all times in the future with District

> Policy KFA – Public Conduct on School Property, to-wit, that you shall never come upon or remain upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District property.

The Notice was condign and justified by Amaro's disruption of the two meetings, the second disturbance coming after Amaro received the May 13 warning letter. It also was narrowly tailored, permitting limited access with permission from the Superintendent or a principal. As shown below, the District never violated either Section 1983 or Amaro's First-Amendment rights.

At ¶ 73, the complaint alleges that the District banned Amaro permanently from coming onto District property. Yet the May 21 Notice, quoted above, plainly says otherwise and belies the allegation. By its own words, the Notice did not permanently ban Amaro. She can come onto District property, but she must get leave from the Superintendent or a principal, which is authorized by A.R.S. § 13-2911(D). In this respect, the statute provides:

> Penalties for violations of the rules shall be clearly set forth and enforced. Penalties shall include provisions for the ejection of a violator from the property and, in the case of a student, faculty member or other staff violator, the violator's suspension or expulsion or any other appropriate disciplinary action.

**2. The Court Should Consider the Governing Board's Recorded Videos.**

At the Governing Board's April 22 meeting, during the discussion of agenda item H, Superintendent Calles paused to celebrate the hiring of a new principal. (Publicly available at https://www.youtube.com/watch?v=L2XbmPMSHE8 (1:11:42 to 1:12:21)). While Superintendent Calles spoke, Plaintiff can be heard yelling loudly and leaving the room. She was not presenting to the Board. She made her commotion during a distinct and separate presentation. In her Complaint, Plaintiff quoted herself at ¶24, lines 2 and 3, to wit: "It's so crazy that you can spend f. . .ing money but we can't deal with this s. .t,

5

huh? I'm f. . .king done with the s . . t." (Complaint, at 6, lines 2-3).  Moments later, Mr. Perez, the newly hired Principal, approached the lectern to accept the celebration from the Board.  He is seen on camera with his young child.  The video footage shows the presence of other members of the public present at this public board meeting, all of whom, including a child in his father's presence, had to endure Amaro's verbal assault.

At ¶ 24 of her complaint, Amaro refers to and quotes her own words.  She therefore relied on this statement, and the Court can and should consider it in this Motion to Dismiss.  Though available on the District website, Plaintiff did not attach this recording as an exhibit.  Despite the ordinary rule, in certain circumstances, extrinsic evidence may be considered by the court without converting a Rule 12(b)(6) motion to one for summary judgment.  *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001).  Specifically, a court may consider evidence outside the pleadings if the complaint "necessarily relies" on that evidence, *i.e.*, when (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the document's authenticity. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  *See also Ritchie*, 342 F.3d at 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

Here, Plaintiff quotes directly from the recorded video and, therefore, under the rule of completeness, Evidence Rule 106, the Court should review this quoted material in determining whether to dismiss the Plaintiff's complaint. Review of the video demonstrates that Plaintiff's disruptive conduct and vulgar words were not related in any way to her public comment at the Board meeting.  Instead, she made her comments during a District employee's celebration before the Board.  Because the Plaintiff referred explicitly to this recording, the Court should consider it when weighing this motion.

Additionally, the recording linked above is an authentic copy of the Governing Board's video minutes of the April 22 meeting, which A.R.S. §38-431.01(C) required the District to keep.    To fulfill this statutory duty, the District keeps these minutes in their recorded form on the District website at https://go.boarddocs.com/az/tollesonuhsd/Board.nsf/Public#.

Similarly, the Court should consider the Governing Board's recording from the May 13 meeting, which is available at https://www.youtube.com/watch?v=IxOjiNEN6Fg.    (2:40:25 to 2:43:00).    In the complaint at ¶ 26, lines 13-19. Plaintiff quoted herself from this meeting.  Thus, Evidence Rule 106 allows the Court to consider her remarks in their entirety.  As with the April 22 meeting, however, she chose only to refer to the meeting and not include the recording.  Yet, the recording is the best evidence of the words she spoke and that she relied on in the complaint.  During this recording, Plaintiff can be heard acknowledging the vulgarity of her statement at the April 22 meeting.  She then proceeded to dress the Board down and attempt to rile the public up.  She admitted getting "everybody riled up" and yelled threatening statements at the board members.  This recording buttresses the District's right under A.R.S. § 13-2911 to stop Amaro from disrupting Governing Board meetings and the business the District was conducting therein.

**3.    Section 1983 as Applied to Local Government**.

The Ninth Circuit summarized the law of section 1983 as applied to local government as follows:

> A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. In particular, ... a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

> We have identified three ways in which [a] plaintiff can satisfy *Monell*'s policy requirement.[3] First, a local government may be held liable when it acts pursuant to an expressly adopted official policy. Second, a public entity may be held liable for a longstanding practice or custom. . . . Third, a local government may be held liable under [Section] 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

*Hartzell v. Marana Unified School District*, 130 F.4th 722, 734 (9th Cir. 2025) (italics in original, internal citations and quotation marks omitted). Thus, Amaro cannot hold the District liable under section 1983 on a *respondeat superior* theory. Of the three possible *Monell* bases of liability, Amaro relies on the official-policy basis of liability, as alleged in paragraphs 72 and 76 of the complaint. The policy in question is District Policy KFA, adopted by the Governing Board on April 23, 2013. A copy of the policy is attached to the complaint as Exhibit 3.

**4.    Policy KFA Is Constitutional as Applied: A Disturbance of Board Meetings Goes beyond Speech.**

A.R.S. § 13-2911(D) requires Arizona school districts to adopt policies for the "maintenance of public order on all property of any educational institution under its jurisdiction that is used for educational purposes and shall provide a program for the enforcement of its rules." Complying with the statutory mandate, the District adopted Policy KFA.

This is consistent with the long-recognized right of a government agency to adopt reasonable time, place, and manner restrictions on the exercise of Free Speech rights in a limited public forum.[4] Time, place, and manner restrictions must be "content-neutral,

---

[3] *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

[4] "Federal courts have generally recognized three categories of public fora: (1) traditional public fora; (2) designated public fora; and (3) limited public fora. Traditional public fora are areas historically used by the public for assembly, such as sidewalks and parks."

"must be narrowly tailored to serve a significant government interest," and must "leave open ample alternative channels of communication." *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 269 (9th Cir. 1995). Policy KFA satisfies such requirements.

The Ninth Circuit weighed the constitutionality of Policy KFA in *Hartzell*, 130 F. 4th at 737. Because of its importance to this case, we quote its analysis extensively:

> The District contends that Policy KFA is constitutional because it prohibits only "interference with or disruption of an educational institution." On its own, there would be little doubt that this prohibition is constitutional. However, this sentence does not stand alone; instead, Policy KFA provides an expansive definition of "interference with" and "disruption of" that forms the basis of Hartzell's constitutional challenge. Policy KFA defines "interfer[ing] with or disrupt[ing]" an educational institution to include, among other things, "[u]se of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment." "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Snyder v. Phelps*, 562 U.S. 443, 458, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) (quoting *Texas v. Johnson*, 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989)). Because Policy KFA allows the District to prohibit speech that it finds "offensive or inappropriate," it runs afoul of this principle. *See id.*
>
> The District defends Policy KFA by arguing that schools nevertheless have substantial authority to regulate speech on school grounds. It is certainly true that "courts must apply the First Amendment 'in light of the special characteristics of the school environment.'" *Mahanoy Area Sch. Dist. v. B.L.*

*Reza v. Pearce*, 806 F.3d 497, 502 (9th Cir. 2015). In contrast, a city council meeting, though generally open to the public, is deemed a limited public forum. *Id.* at 503 ("We have held that city council meetings, where the public has the opportunity to address officers of a local government or local governmental agency, are limited public fora.") Like a city council meeting, a school board meeting is considered a limited public forum for free-speech analysis. *See Evans v. Hawes*, 718 F.Supp.3d 1351, 1361 (D. Nev. 2024) ("Open school-board meetings are considered limited public fora.") *See also* cases collected in *Evans* at n. 35.

9

*ex rel. Levy*, 594 U.S. 180, 187, 141 S.Ct. 2038, 210 L.Ed.2d 403 (2021) (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988)). **Even so, for "school officials to justify prohibition of a particular expression of opinion, [they] must be able to show that [their] action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint."** *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

*Hartzell*, 130 F.4th at 737 (emphasis added.)

This case goes beyond speech. The "something more," required by *Hartzell*, is the disturbance of a Governing Board meeting by a combination of vulgar language (the "F-bomb") used at a Governing Board meeting where children were present, shoving furniture, and attempting to incite the audience. Local governments can prohibit such disturbances without violating the First Amendment:

> In *White,* for example, we considered a facial challenge to a city ordinance that authorized a city council to remove individuals from hearings if they made "personal, impertinent, slanderous or profane remarks." 900 F.2d at 1424. We upheld the city ordinance, but only because it authorized removal when an attendee "disrupts, disturbs or otherwise impedes the orderly conduct of the Council meeting." *Id.* at 1426.

*Reza*, 806 F.3d at 503.

In *Reza*, the Ninth Circuit further explained the right of local governments to control disturbances at public meetings and the contours and limitations of such right:

> We have recognized that, in order to safeguard the purpose of a limited public forum, the government may restrict speech in that forum. *See White,* 900 F.2d at 1426. "In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n,* 460 U.S. at 46, 103 S.Ct. 948. *See also Kindt v. Santa Monica Rent Control Bd.,* 67 F.3d 266, 271 (9th Cir.1995) ("The fact remains that limitations on speech at those meetings must be reasonable and viewpoint neutral, but that is all they need to be.").

*Id.* at 503.

We recognize that the complaint, in conclusory language, alleges "retaliation" on account of speech. Vague and conclusory allegations, however, do not meet the pleading standards and thus must be ignored. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). *See also Birt*, 2025 WL 3677476, at * 3 (D.Ariz., Dec. 18, 2025)("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . 'The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" )

The complaint attached the May 21 Notice as Exhibit 4, and the Notice stated the precise reasons for limiting access to school property. It plainly recites: "Use of profanity, disturbance of a presentation, and assaulting District furniture on a prior notice and repeated profanity on May 13, 2025." Amaro's blatant violation of both Policy KFA and A.R.S. § 13-2911, even after she received the May 13 warning notice, prove she cannot be trusted to refrain from further disturbances without a sanction to deter her. As permitted by the statute and the policy, the Notice's requirement that Amaro get permission of the Superintendent or principal to come onto District property was narrowly tailored and is proper. *Hartzell*, 130 F.4th at 737; *Reza*, 806 F.3d at 503. *See also Birt*, 2025 WL 3677476, at * 8 (Plaintiff must allege non-conclusory allegations to pass 12(b)(6) muster.)

**5.    Amaro Had No Due Process Right to Be Satisfied.**

The Ninth Circuit defined the elements of a section 1983 due process claim as follows: "A section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Hartzell*, 130 F. 4th at 743.

At the District Court level, this Court, through Judge Rash, held in *Hartzell* that a parent had no liberty interest or property rights to enter District property to be vindicated by the due process clause.  Judge Rash elaborated:

> However, that right is not limitless and Plaintiff fails to cite any binding case holding this fundamental right extends to a parent's ability to be on campus. [FN omitted] (*Id.*) Indeed, numerous cases suggest otherwise. *See e.g., T.L. ex rel. Lowry v. Sherwood Charter Sch.*, No. 03:13-CV-01562-HZ, 2014 WL 897123, at *3 (D. Or. Mar. 6, 2014) ("[N]o court has extended a parent's fundamental liberty interest in the care of his or her children to a parental right to physically access a child's school."), *aff'd sub nom. Lowry v. Sherwood Charter Sch.*, 691 F. App'x 310 (9th Cir. 2017); *Flores v. Victory Preparatory Acad.*, 411 F. Supp. 3d 1149, 1162 (D. Colo. 2019) (courts have determined parents do not have constitutional right to access school property). **Because Plaintiff had no constitutional right to access school property, no procedural due process was required before Plaintiff was banned from the property.**

*Hartzell v. Marana Unified School District*, No. CV-21-00062-TUC-SHR, 2023 WL 2425009, at * 7 (D. Ariz, March 9, 2023) (emphasis added).

In *Lowry v. Sherwood Charter Sch.*, No. 03:13-CV-01562-HZ, 2014 WL 897123, at *3 (D. Or., March 6, 2014), referenced above by Judge Rash, Judge Hernandez made a tour-de-force summary of the law holding no parental right to come onto school property:

> However, no court has extended a parent's fundamental liberty interest in the care of his or her children to a parental right to physically access a child's school. As the Western District of Michigan explained, "[w]hile *Troxel* does mention that parents have the right to direct and control the education of their children ..., nothing in that decision suggests that it includes the right to go onto school property, even if doing so is necessary to participate in the child's education." *Mejia v. Holt Pub. Schs.,* No. 5:01–CV–116, 2002 WL 1492205, at *5–6 (W.D.Mich. Mar. 12, 2002); *see also Lovern v. Edwards,* 190 F.3d 648, 655–56 (4th Cir.1999) (parent's claim that parent's constitutional parental rights were violated by school superintendent's barring parent from school premises held "plainly insubstantial and entirely frivolous"); *Justice v. Farley,* No. 5:11–CV–99–BR, 2012 WL 83945, at *3 (E.D.N.C. Jan. 11, 2012) ("While parents have a general constitutional right to direct their children's education without unreasonable interference by the states, this right is limited in scope and does not include the unfettered right

to access school premises"; further noting that "[m]any courts have held that parents do not have a constitutional right to be on school premises" and citing cases) (citation omitted); *appeal dismissed,* 470 F. App'x 136 (4th Cir.2012); *Porter v. Duval Cnty. Sch. Bd.,* No. 3:09–CV–285–J–32MCR, 2010 WL 1252177, at *7 (M .D.Fla. Mar. 26, 2010) ("Parents have no constitutional right to be on school premises"), *aff'd,* 406 F. App'x 460 (11th Cir.2010); *Meadows v. Braxdale,* No. A–08–CA–819–SS, 2010 WL 55974, at *5 (W.D.Tex. Jan. 4, 2010) ("although parents have a constitutional liberty interest 'in the care, custody, and control of their children,' *Troxel[ ],* 530 U.S. [at] 65–66[ ], neither the Supreme Court nor any other court has ever held the Constitution establishes a parental right to access a child's classroom or other school areas while school is in progress and other students are present").

Returning to *Hartzell* at the Ninth Circuit level, plaintiff argued that her due process claim encompassed a First Amendment theory. That expanded what Hartzell had argued before the District Court, and thus the Ninth Circuit refused to consider it on procedural grounds without getting to the merits. 130 F.4th at 744-45. Yet, neither did the Ninth Circuit reverse the Judge Rash's denial of a due process right to come onto District property, which, as noted above, is consistent with what seems to be a widespread principle under the cases collected by Judge Hernandez in *Lowry*.

Lacking a liberty interest or property rights to enter District property, Amaro had no due-process right to be vindicated. *Hartzell*, 130 F.4th at 737; *Reza*, 806 F.3d at 503; *Lowry*, 2014 WL 897123, at *3. Thus, the Notice never violated the 14th Amendment, and this claim likewise should be dismissed for failure to state a claim.

**6.     Qualified Immunity Bars the Claims against the Superintendent Personally.**

This Court has defined personal liability of a government actor under Section 1983 as follows:

For a government actor to be liable in his personal capacity under a § 1983 claim, "there must be a showing of personal participation in the alleged rights deprivation[.]" *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Additionally, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

*Birt*, at * 5.  Further,

To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Id.* The retaliation claim fails to meet these elements. Disturbance of governing board meetings is not constitutionally protected. *Reza*, 806 F.3d at 503. Without engagement in a constitutionally protected activity, the other two elements never come into play.

Further, to the extent that the complaint makes a claim against the Superintendent personally, the doctrine of qualified immunity bars it. This Court explained the doctrine as follows:

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson*, 974 F.3d at 1018. A qualified immunity analysis in a § 1983 action involves two steps: (1) whether the official's conduct violated a constitutional right; and (2) if so, whether the constitutional right was "clearly established" at the time of the alleged violation, such that a reasonable official would have known his conduct was unlawful under the circumstances. *Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir. 2009).

*Birt*, 2025 WL 3677476, at * 5.

This Court further explained the meaning of "clearly established in this context:

For a right to be considered 'clearly established,' it is generally important that the precedential case law be factually similar to the case at issue." *Denby v. City of Casa Grande*, 668 F. Supp. 3d 855, 870 (D. Ariz. 2023). To determine whether a clearly established right exists, the focus is "on whether the officer had fair notice that her conduct was unlawful." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). The Supreme Court has said, " 'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation,' " *Hunter v. Bryant*, 502 U.S. 224, 227 (1991),

14

because "qualified immunity is 'an immunity from suit rather than a mere defense to liability,' " *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). *Id.*

Amaro had no clearly established right to disturb Governing Board meetings as she did.  In fact, doing so, as she did, violated Arizona law, in specific, A.R.S. § 13-2911. As a result, the District limited her access, as the Notice provides, to school property (but did not deny such access) because she "violated District Policy KFA – Public Conduct on District Property in the following way: Use of profanity, disturbance of a presentation and assaulting District furniture on a prior notice and repeated on May 13, 2025."  The Notice was proper, it complied with A.R.S. § 13-2911, it did not violate Amaro's rights, and it was narrowly tailored.   It therefore could not serve as a basis for section 1983 liability on the Superintendent's part. Further, A.R.S. § 13-2911 would have to be unconstitutional and the Superintendent, an educator and not a lawyer, would have to have known of its unconstitutionality.  Neither is true.

### CONCLUSION

For the foregoing reasons, the complaint failed to state a valid and proper claim for relief, and the Court should dismiss the complaint and this action on such grounds.

/ / /

/ / /

15

RESPECTFULLY SUBMITTED on December 29, 2025.

**CANTELME & BROWN, P.L.C.**

/s/  David J. Cantelme, AZ. St. Bar No. 006313
2020 S. McClintock Drive, Suite 109
Tempe, Arizona 85282
*Attorneys for Defendants Tolleson Union High*
*School District and Jeremy Calles*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2025, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system and via email to:

Jonathan Riches, Esq.
Timothy Sandefur, Esq.
Adam Shelton, Esq.
Scharf-Norton Center for
Constitutional Litigation at the
GOLDWATER INSTITUTE
500 E. Coronado Road
Phoenix, Arizona  85004
jriches@goldwaterinstitute.org
tsandefur@goldwaterinstitute.org
ashelton@goldwaterinstitute.org
kschlott@goldwaterinstitute.org
*Attorneys for Plaintiff*

/s/ D. Udvarnoky