**Scharf-Norton Center for**
**Constitutional Litigation at the**
**GOLDWATER INSTITUTE**
Jonathan Riches (025712)
Timothy Sandefur (033670)
Adam Shelton (038252)
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Diann Amaro,

       Plaintiff,

   vs.

Tolleson Union High School District; and
Jeremy Calles in his individual capacity and
in his official capacity as Superintendent of
Tolleson Union High School District,

       Defendants,

No. 2:25-cv-03919-JJT

**PLAINTIFF'S MEMORANDUM**
**OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO**
**DISMISS PLAINTIFF'S**
**COMPLAINT UNDER RULE**
**12(b)(6)**

**Oral Argument Requested**

Plaintiff, by and through her attorneys of record, submits this
Memorandum of Law in Opposition to Defendants' Motion to Dismiss.

**INTRODUCTION**

This case presents the court with an important question: May public school
authorities permanently ban a parent from all School District property—including when
the property is rented out for events by a private party—because she briefly used
profanities at two Governing Board meetings while critiquing the official policies at a
public forum? Precedents from the Supreme Court and the Ninth Circuit show why
Defendants' Motion to Dismiss must be denied.

The Supreme Court has long held that criticism of government officials on
matters of public concern lies at the core of the First Amendment, even in limited public

1

forums, and even when expressed with some profanities. *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966); *Cohen v. California*, 403 U.S. 15, 25 (1971); *Snyder v. Phelps*, 562 U.S. 443, 461 (2011). While governing bodies may enforce reasonable, viewpoint-neutral decorum rules, they cannot suppress speech, or impose sweeping exclusions of their critics, unless there has been an *actual* disruption of a proceeding that is likely to recur absent the exclusion. *See Reza v. Pearce*, 806 F.3d 497, 506 (9th Cir. 2015); *Norse v. City of Santa Cruz*, 629 F.3d 966, 976 (9th Cir. 2010).

Defendants have done what the First Amendment forbids. And, accepting Plaintiff's well-pleaded allegations as true, and drawing all reasonable inferences in her favor, Defendants' motion should be denied.

After months of controversy regarding the Defendants' financial mismanagement of the District, Plaintiff began speaking at Governing Board meetings to object to such wrongdoing. Over time, these comments grew impassioned, and at two meetings Plaintiff briefly uttered profanities. Neither utterance impeded the meeting or involved any kind of personal threat, and on neither occasion did Defendants order her removed from the meeting as a result of any disruption. But Defendants later used these incidents as a pretext to *permanently ban her from entering or remaining on any property of the Tolleson Union High School District ("TUHSD")*. This includes sidewalks, parking lots, playing fields, and any other District property unless she obtains discretionary permission from those who imposed this ban.

Defendants' Motion rests largely on recharacterizing Plaintiff's allegations as disruptive conduct, and on disputing whether in fact the ban Defendants imposed was really a permanent ban. But the 12(b)(6) stage is not the place for resolving such factual disputes. The Complaint plausibly alleges that the ban was imposed solely because of her speech, as evidenced by the letter imposing the ban—which is attached to the Complaint. The question here, therefore, is whether, assuming this to be true, Plaintiff has stated a cause of action. The answer is yes.

Plaintiff has pleaded sufficient facts to lead to a reasonable inference that she: (1) was engaged in protected speech; (2) was retaliated against because of that protected speech; (3) was punished pursuant to an official policy that banned "offensive or inappropriate language" which is unconstitutional as applied, and (4) was denied any process before or after the imposition of this permanent and overly broad ban. For these, and the reasons that follow, the Court should deny Defendants' Motion to Dismiss.

## STANDARD OF REVIEW

When considering a motion to dismiss for failure to state a claim, a court is to take the well-pleaded allegations as true and construe them in the light most favorable to the Plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff overcomes a motion to dismiss by alleging "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A 12(b)(6) motion tests only "the legal sufficiency of a claim" not the ultimate merits of the issue. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Thus "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted).

## BACKGROUND

Plaintiff Diann Amaro is a parent of a student enrolled in TUHSD. Compl. (Doc. 1) ¶ 1. In early 2025, she began speaking out against the fiscal mismanagement of TUHSD and the poor leadership of the Defendant Governing Board and Superintendent. *Id.* ¶¶ 3, 17-23. From January 2025 through May 2025, she spoke at nearly every Governing Board meeting, focusing her remarks on issues of public concern, including the misuse of taxpayer funds and resources for projects not directly related to the educational needs of TUHSD students. *Id.* ¶¶ 14, 17-31. During this time, she was never

removed from a meeting, ruled out of order, or prevented from completing her comments. *Id*. ¶¶ 17-31.

But Defendants were displeased with her impassioned criticism, and sought an excuse to bar her from future meetings. *Id*. ¶¶ 2, 4, 21. Defendants found that excuse in the form of two incidents in which Ms. Amaro, frustrated at the Defendants' mismanagement of the schools, uttered profanities during her remarks.

The first occurred on April 22, 2025, when the Defendant Board removed an item from a consent agenda that would have ratified numerous personnel changes and tabled it for another meeting. Frustrated that the Defendants left the employees and members of the community in the lurch, and instead moved to discuss a new building project, Ms. Amaro left the meeting and while leaving said: "It's so crazy that you can spend fucking money but we can't deal with this shit, huh? I'm fucking done with the shit." *Id.* ¶ 24. Defendants did not at that time rebuke her for uttering these words, remove her from the meeting, or take any other action against her at that meeting. *Id*. Further, her words did not cause an actual disruption at the meeting. *Id*. Ms. Amaro simply left the meeting. The second occurred on May 13, 2025, when Ms. Amaro spoke about the fact that not all of the members of the Defendant Governing Board "actually go to fucking work." *Id.* ¶ 26. Ms. Amaro quickly apologized for her language, and Defendants allowed her to complete her public comments in full. *Id*. Defendants did not eject her, nor did they rule her out of order. *Id*.

Instead, on May 13, before Ms. Amaro spoke, Defendants handed her a letter (which she did not immediately read) asserting that she violated District Policy through the "[u]se of profanity, disturbance of a presentation and assaulting District furniture." Compl. Ex. 2 (Doc. 1 at 20). The policy—known as the "KFA" policy—governs public conduct on a school district's property. *See id*. It permits the removal or exclusion of a person for conduct that interferes with or disrupts a district's operations and defines interference or disruption to include speech deemed "offensive or inappropriate." Compl. Ex. 3 (Doc. 1 at 22).

4

Then, on May 21, 2025, Defendants gave Ms. Amaro a second document, entitled "Notice of Exclusion From and Requirement for Permission to Enter [District] Property." Compl. Ex. 4 (Doc. 1 at 24). This No-Trespass Letter asserted that Ms. Amaro violated Policy KFA by the "[u]se of profanity, disturbance of a presentation and assaulting District furniture on a prior notice and repeated profanity on May 13, 2025." *Id*.

By the No-Trespass Letter's express terms, the only conduct identified as occurring on May 13, 2025—the incident triggering the ban—was Ms. Amaro's brief use of a singular profanity during her public comment. *Id*. The No-Trespass Letter ordered her to "never come upon or remain upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District property." *Id*. The No-Trespass Letter imposes no time limits, provides no standards for obtaining permission, and vests complete discretion in the very official who issued the order, rendering the exclusion functionally permanent—although subsequent communication with Defendant Superintendent Calles makes clear that Defendants will reconsider if Ms. Amaro demonstrates sufficient "remorse[]" to Superintendent Calles. *See* Compl. Ex. 10 (Doc. 1 at 37) (email from Defendant Calles stating "[i]f you want me to entertain the possibility of permitting Ms. Amaro back onto District property then you would have a far greater chance of being successful by convincing me that she feels remorseful about her actions.")

Through counsel, Ms. Amaro demanded the rescission of the ban because it violated the First Amendment's protection for free speech and the Arizona Parents' Bill of Rights by preventing her from accessing District property for matters involving her child. Compl. ¶¶ 41-44. Defendants then amended the No-Trespass order to allow her to enter District property for school activities that *directly* involve her child, but leaving the remainder of the sweeping exclusion in place. *Id*. at ¶¶ 44-45.

5

**LEGAL ARGUMENT**

I.    **Plaintiff's well-pleaded facts, taken with the inferences due to Plaintiff, plausibly state a claim that Defendants retaliated against her because of her protected speech.**

The First Amendment prohibits government officials from retaliating against an individual because of her protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). *See also Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Such retaliation threatens to chill individuals in the exercise of their rights, thereby offending the Constitution. *Hartman*, 547 U.S. at 256. Further, "Vulgarit[ies]," when uttered in the context of outraged protest against government policy, are fully protected by the First Amendment. *See Cohen*, 403 U.S. at 25. While the District can impose neutral rules of decorum, it "cannot constitutionally prohibit all speech on school property that it finds 'offensive or inappropriate[,]'" or "prohibit that speech simply by defining it as disruptive or intrusive." *Hartzell v. Marana Unified Sch. Dist*, 130 F.4th 722, 738 (9th Cir. 2025). Nor can it penalize speech unless "it 'materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school.'" *Id*. (citation omitted).

Here, Ms. Amaro alleges that the Defendants retaliated against her by permanently banning her from District property—unless she receives its permission according to its standardless, absolute discretion—because Defendants disliked her criticisms of their mismanagement. A retaliation claim generally has three elements: (1) that plaintiff engaged in protected speech; (2) an adverse action was taken "that would chill a person of ordinary firmness from continuing to engage in the protected activity;" and (3) that the protected speech was the but-for cause of the adverse action. *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010); *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019). Ms. Amaro's well-pleaded facts satisfy all three elements.

**First Element:** Ms. Amaro's well-pleaded facts plausibly state that her criticism of the Defendants concerned matters of public concern and that the two incidents of

profanity were in the course of critiquing Defendants' spending of taxpayer dollars. *See Rosenblatt*, 383 U.S. at 85 ("[c]riticism of government is at the very center of the constitutionally protected area of free discussion."). While a school board meeting is a limited public forum, and Defendants can regulate the time, place, and manner of speech, such regulations must be viewpoint neutral, *Reza*, 806 F.3d at 503, and Defendants cannot penalize speech for being "disruptive" unless it was *actually disruptive,* which "'does not mean constructive disruption, technical disruption, virtual disruption, *nunc pro tunc* disruption, or imaginary disruption.'" *Id.* at 506 (quoting *Norse*, 629 F.3d at 976).

Ms. Amaro has pleaded that there was no actual disruption at either the April 22 or May 13 meetings resulting from the brief utterance of some profanities. Defendants did not reprimand her, order her to stop speaking, or to leave, or take any other action against her at either meeting as a result of the speech. Complaint ¶¶ 24-26, 32. Absent an *actual disruption,* the District may not exclude her from meetings under *Norse* or *Reza*. The use of profanity cannot by itself be deemed disruptive. On the contrary, absent *actual* disruption, the use of vulgarity in protest against government action is constitutionally protected. *Cohen, supra.*

Amazingly, Defendants' Motion to Dismiss makes no effort to address these points, instead offering only the conclusory assertion that "[d]isturbance of governing board meetings is not constitutionally protected." MTD at 14. But Defendants offer no reason to believe Ms. Amaro "disturb[ed]" the meetings,[1] and the fact that Defendants allowed her to finish her remarks and took no action against her at the time proves the contrary. Complaint ¶¶ 24-26, 32. Further, vulgarity alone cannot qualify as disruption under *Norse* and *Reza* especially as it is explicitly protected under *Cohen* even in courthouse. (Defendants' assertion that Ms. Amaro "threaten[ed]" people, *id.* at 4, is

---

[1] Defendants also repeatedly claim Ms. Amaro "attempt[ed] to incite the audience into joining the disturbance," *id.* at 2, 4, 10, but don't explain what this means, and the No-Trespass Letter contains no explanation of what "incitement" they're referring to. Ms. Amaro didn't "incite" anything.

simply not true, but in any case, that's a factual dispute to be resolved at trial; dismissal is therefore improper.) *Cf. Vollmecke v. Indep. Sch. Dist.*, 753 F. Supp.3d 792, 806 (W.D. Mo. 2024) (where speaker did not *actually* disrupt school board meeting, District ban was unconstitutional.)

**Second Element:** Ms. Amaro's well-pleaded facts plausibly allege an adverse action by the Defendants that would chill the speech of a person of ordinary firmness. Currently, Ms. Amaro can "never come upon or remain upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District property" unless she is attending an activity "directly"[2] involving her child who is a senior. Compl. ¶ 4; Ex. 6 (Doc. 1 at 29). A permanent ban like this, one that cuts an individual off from events even open to the public or private events that have rented a space from the Defendants, is obviously chilling.

"A prohibition on entering county property is a concrete consequence that would objectively chill a person of ordinary firmness from criticizing county commissioners." *Rinne v. Camden Cnty.*, 65 F.4th 378, 384 (8th Cir. 2023). *See also*, *McNeally v. HomeTown Bank*, 155 F.4th 1000, 1007 (8th Cir. 2025) (holding that ban from public school property, like in *Rinne*, would chill a person of ordinary firmness).

Defendants claim the No-Trespass Letter doesn't actually exclude Ms. Amaro from school property because they can let her onto such property if she asks the Defendants for permission. MTD at 5. But this does not cure the fact that the No-Trespass Letter functions as a permanent ban because: (1) permission is discretionary; (2) it is vested in a person alleged to have retaliated against her; and (3) there are no

---

[2] The District has not made clear what qualifies as "directly" or "indirectly." It is clear, however, that she is barred from attending or speaking at the District's public meetings.

standards or timeline for the review of a request for permission. Compl. ¶¶ 54, 72, 73. This uncertainty itself is chilling.

**Third Element**: Ms. Amaro's well-pleaded facts, and the reasonable inferences required to be drawn in her favor, plausibly allege that her protected speech was the but-for cause of the adverse action taken against her—especially when combined with the Defendants' own documents (attached to the Complaint) explaining the terms of and reasoning for the ban. Several factors support this.

First, Ms. Amaro has pleaded that the Defendants were displeased with her criticisms of their financial and governance decisions. Compl. ¶¶ 2, 4. Ex. 10 (Doc. 1 at 37). Demonstrating this is the then-Board President Leezah Sun's sarcastic reference to Plaintiff as "my favorite" when calling her to the podium during the March 25, 2025 public comment period. Compl. ¶ 21.

Second, the Warning Letter, the No-Trespass Letter, and the Amended No-Trespass Letter support, at the very least, an inference that Ms. Amaro's constitutionally protected speech was a but-for cause of the Defendants banning her from school property. The Warning Letter asserted that Ms. Amaro violated Policy KFA by the "*[u]se of profanity*," among other things.[3] Compl. Ex. 2 (Doc. 1 at 20) (emphasis added). And the No-Trespass Letter identified the second incident—the one that actually triggered the permanent ban—as the use of profanity alone. Compl. Ex. 4 (Doc. 1 at 24). The Amended No-Trespass Order solidifies this conclusion by identifying only the utterance of a profanity as the incident allegedly necessitating the ban. Compl. Ex. 6 (Doc. 1 at 29).

---

[3] The Letter also cited the unspecified "disturb[ance]" that the Defendants claim (without evidence) occurred—there was no such disturbance, as described above—as well as her "assaulting District furniture." Compl. Ex. 2. This refers to Defendants' claim that Ms. Amaro "slamm[ed] [her] hand against chairs in the presence of minors." *Id.* While it's conceivable that hitting one's hand against a chair might be disruption under *Norse* and *Reza*, Defendants must offer some actual facts, not a bald, self-serving assertion.

Third, the policy under which Defendants permanently banned Ms. Amaro, Policy KFA, explicitly allows for a member of the public to be punished *exclusively* for speech. Compl. Ex. 3 (Doc. 1 at 21-22) ("[a] person may also interfere with or disrupt the District function by … [u]se of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment.")

Fourth, Defendants have conceded that their position is that "prohibiting disruptive and vulgar *speech* at a Board meeting is permissible." Defendants' Notice of Certification of Conferral (Doc. 16 at 2-3) (emphasis added). The context of that statement supports the inference that Ms. Amaro's speech is exactly what motivated Defendants in permanently banning her from District property.

Finally, Defendants' attempt to reframe Ms. Amaro's speech as disruptive is not appropriate for a motion to dismiss, because whether an *actual* disruption occurred is a question of fact requiring discovery. *See Norse*, 629 F.3d at 974-75.

Thus, Ms. Amaro's well-pleaded facts plausibly allege that Defendants violated her First Amendment rights.

**II.    The Complaint plausibly alleges that Policy KFA is unconstitutional as applied.**

Ms. Amaro alleges that Defendants acted pursuant to an official policy—Policy KFA—in permanently banning her from school property for her speech. Specifically, she alleges that Defendant Governing Board is liable for her constitutional injuries given Policy KFA.

A government entity may be held liable under 42 U.S.C. § 1983 if its policy is the "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Here, Ms. Amaro alleges that she was banned pursuant to Policy KFA, as Defendants admit as much in the Warning Letter, No-Trespass Letter, and Amended No-Trespass Letter (Compl. Exhibits 2, 4, and 6 (Doc. 1 at 20, 24, 29)).

A Governing Board meeting is a limited public forum, so Defendants can regulate the time, place and manner of speech so long as the regulations are reasonable and applied in a viewpoint-neutral manner. *See Reza*, 806 F.3d at 503; *Norse*, 629 F.3d at 975; *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270–71 (9th Cir. 1995).

Policy KFA is neither. Instead, it permits the restriction of speech based on viewpoint by defining conduct that interferes with or disrupts TUHSD functions to include the use "of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment." Compl. Ex. 3 (Doc. 1 at 22).

The Ninth Circuit has already determined—when evaluating the same Policy KFA in a suit against another Arizona school district—that a "District cannot constitutionally prohibit all speech on school property that it finds 'offensive or inappropriate.' Nor can the District prohibit that speech simply by defining it as disruptive or intrusive." *Hartzell*, 130 F.4th at 738. In fact, *Hartzell* also held that a District can only prohibit or punish offensive or inappropriate speech if "it 'materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school.'" *Id*. (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969)). Unlike in a classroom setting, "the District does not have a special interest in regulating speech [generally]." *Id*. at 738.

Defendants try to distinguish *Hartzell* by arguing that they banned Ms. Amaro because she "disturb[ed]" meetings, rather than because of her speech. MTD at 10. But the defendants in *Hartzell* also said they banned the plaintiff not for speech but for conduct that was disruptive; in that case, grabbing the school principal's arm. 130 F.4th at 737. The Ninth Circuit nevertheless held that determining the *actual* reason for the banning was a job for the jury, *id*.—i.e., is a dispute of fact. Thus, dismissal is improper. *See also Norse*, 629 F.3d at 974-75 (whether plaintiff was ejected from a meeting because of disruption or because of his viewpoint was a material factual dispute that precluded summary judgment.).

11

Moreover, "disturbing" is not the standard. *"Actual disruption"* is the standard. *Id.* at 976 (emphasis added). The First Amendment protects "disturbing" speech. *Cohen*, 403 U.S. at 25; *Snyder*, 562 U.S. at 461. And even in cases of actual disturbance, a school board *cannot* "indefinitely ban an individual from a government building based on a single disruption." *Reza,* 806 F.3d at 506. Yet that's exactly what the Defendants have done here.

Thus, Ms. Amaro has pleaded sufficient facts when considered with all reasonable inferences at this stage of litigation to plausibly claim Policy KFA barring "speech … that is offensive or inappropriate" is unconstitutional and that Defendant Governing Board is liable for the application of that policy to punish her constitutionally protected speech.

**III.    The Complaint plausibly alleges that Defendants violated Plaintiff's due process rights by permanently banning her from all district property without providing any pre or post deprivation process.**

An individual cannot be deprived of liberty or property without some sort of neutral process either before or after the deprivation. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Generally, a due process violation has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Id*. Defendants cite multiple cases holding that parents have "no liberty interest or property right[] to enter District property," and claim this shows that Ms. Amaro was entitled to no process. MTD at 12.

But Ms. Amaro is not arguing that she has a parental right to access school property. She's arguing that she has a right as a citizen to enter government property *when the property is opened to the public* and a liberty interest in *engaging in speech in a limited public forum.* These rights are unquestionably protected by the Due Process Clause. *Vollmecke*, 753 F. Supp.3d at 811 (parent had "a protected liberty interest in his free speech right to access the limited public forum" of school board meeting).

What's more, citizens generally have a constitutionally protected liberty interest to be on government property if it's open to the general public. *City of Chicago v.*

12

*Morales*, 527 U.S. 41, 54 (1999) (plurality opinion). The express terms of the Amended No-Trespass Order, however, prohibit Ms. Amaro from being on *any* district property—even sidewalks—and any property that the District holds out as open to the general public. Compl. Ex. 6 (Doc. 1 at 29). For example, she's specifically prohibited from entering a playing field, meaning she cannot even attend sporting events that are open to the public.

As to the second and third elements of a Due Process Claim, the government has clearly deprived her of that interest by permanently banning her—and it has provided her with no process at all. Compl. ¶ 90.

The sweeping nature of the ban threatens to invade Ms. Amaro's rights still further, as it prevents her from entering district property even to attend events hosted by a private party that has rented the property from Defendants. For example, Defendants entered into a lease agreement with a developer to build affordable housing on District Property. *Id*. ¶ 3. Under the plain language of this ban, Ms. Amaro could neither live in these housing units nor visit anyone who did so. In fact, as alleged in her Complaint, she was already unable to attend her niece's dance recital because a private dance group rented property from Defendants. *Id*. ¶¶ 54-55.

Ms. Amaro's Complaint plausibly asserts a violation of due process.

**IV.    Defendant Calles is not entitled to qualified immunity.**

Defendant Calles has raised the defense of qualified immunity. MTD at 13-15.[4] Qualified immunity includes two inquiries: (1) whether an official violated a constitutional right; and (2) whether that right was clearly established at the time of the asserted violation. *Sampson v. Cnty. of L.A.*, 974 F.3d 1012, 1018 (9th Cir. 2020).

---

[4] In the Notice of Certification of Conferral, Defendants argue that Defendant Calles should be dismissed in his individual capacity because Ms. Amaro is only seeking nominal damages. Notice of Certification of Conferral 2. Besides citing no caselaw in support of dismissal, Defendants failed to raise this argument in their Motion to Dismiss, so it should be considered waived.

A right is "clearly established" if "at the time of the challenged conduct, the contours of the right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up). There does not need to be "a case directly on point for a right to be clearly established," *Kisela v. Hughes*, 584 U.S. 100, 104 (2018), because, as then-Judge Gorsuch once observed, "some things are so obviously unlawful that they don't require detailed explanation." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015).

Defendant Calles is not entitled to qualified immunity because: (1) he violated Ms. Amaro's constitutionally protected rights; and (2) multiple courts had already determined at the time of the ban—May 2025—both that an individual could only be banned from a limited public forum for causing an *actual* disruption (which didn't occur here) and that the policy under which Defendant banned Ms. Amaro is constitutionally deficient.

It is axiomatic that a government official cannot punish an individual because the official disagrees with the individual's speech, even if that speech is offensive or vulgar. *Hartman,* 547 U.S. at 256; *Cohen*, 403 U.S. at 25. Courts have also made it so clear that an official cannot ban someone from a public forum in retaliation for her speech that the question had been placed "beyond debate" long before Defendants imposed their unconstitutional ban on Ms. Amaro. *Kisela*, 584 U.S. at 104.

Specifically, in *Reza*—a First Amendment Retaliation case quite similar to this case—the Ninth Circuit reversed a grant of qualified immunity to Senator Russell Pearce, who, when serving as President of the Arizona Senate, banned an individual from the Senate building for supposedly causing a "disturbance" during a hearing. *Reza*, 806 F.3d at 502-03. The court found that there was factual dispute as to whether there was an actual disruption, and this foreclosed even qualified immunity. *Id*. at 505.

Importantly, the court said it was clearly established (when, "viewing the evidence in the light most favorable to … the non-moving party") that the Senator

violated the plaintiff's First Amendment rights, because multiple earlier cases held that an individual could only be removed and banned from a government meeting if she causes an *actual* disruption. *Id*. at 505. *See also McElhaney v. Williams*, 81 F.4th 550, 558-59 (6th Cir. 2023) (holding it was clearly established that school officials could not ban a father for a week from attending his daughter's softball games because he violated team policy by texting the coach about playing time); *McNeally*,  155 F.4th at 1008 (denying qualified immunity to a Superintendent because it "was clearly established that a government official may not retaliate against a citizen for the exercise of her First Amendment rights" and that " a government official may not ban someone from government property in retaliation for speech.").

Finally, *Hartzell* found that Policy KFA—the same Policy the Defendants were following here—is constitutionally deficient insofar as it permits schools to ban members of the public for "offensive or inappropriate speech." 130 F.4th at 737. *Hartzell* was decided in March 2025, before the Superintendent sent the Warning Letter.

While Defendants attempt to characterize Ms. Amaro's speech as disruption, *Reza* makes clear that whether there was an *actual disruption* is a question of fact, and cannot be resolved by application of qualified immunity at the 12(b)(6) stage. There, the Ninth Circuit reversed the District Court's grant of qualified immunity to Senator Pearce because "when genuine disputes of fact are resolved in Reza's favor"—as this Court must do on a 12(b)(6) motion—"Senator Pearce violated Reza's clearly established First Amendment rights" and was thus not entitled to qualified immunity. 806 F.3d at 507. The same is true here: when the facts are viewed in the light most favorable to Ms. Amaro (there was no *actual disruption*), Defendant Calles violated her clearly established First Amendment rights by retaliating against her for protected speech.

## CONCLUSION

The Court should *deny* Defendants' motion.

**RESPECTFULLY SUBMITTED** this 13th day of January 2025 by:

/s/ *Adam Shelton*
Jonathan Riches (025712)
Timothy Sandefur (033670)
Adam Shelton (038252)
**Scharf-Norton Center for Constitutional Litigation
at the GOLDWATER INSTITUTE**

*Attorneys for Plaintiff*

16

**CERTIFICATE OF SERVICE**

Document Electronically Filed and Served on all counsel of record by ECF this 13th day of January 2026.

David J. Cantelme
Aaron Brown
CANTELME & BROWN, P.L.C.
2020 S. McClintock Dr., Ste. 109
Tempe, Arizona 85282
djc@cb-attorneys.com
aaron@cb-attorneys.com
*Attorneys for Defendants*

/s/ *Kris Schlott*
Kris Schlott, Paralegal

17