**CANTELME & BROWN, P.L.C.**

A Professional Liability Company
2020 S. McClintock Drive, Suite 109
Tempe, Arizona 85282
Tel (602) 200-0104    Fax (602) 200-0106
david@cb-attorneys.com /aaron@cb-attorneys.com
David J. Cantelme, Bar No. 006313
D. Aaron Brown, Bar No. 022133
*Attorneys for Defendants Tolleson Union*
*High School District and Jeremy Calles*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Diann Amaro, | No. 25-cv-03919-PHX-JJT |
| Plaintiff, | |
| v. | **DEFENDANTS' REPLY MEMORANDUM SUPPORTING THEIR MOTION TO DISMISS** |
| Tolleson Union High School District; and Jeremy Calles in his individual capacity and in his official capacity as Superintendent of Tolleson Union High School District, | **Oral Argument Requested** |
| Defendants. | |

**A.    Introduction.**

The issue in this case is whether, in the name of free speech, an individual can disrupt two school-board meetings, with children present with their parents, shout profanities, shove furniture at one of the meetings, incite the audience at another, and cause a disruption of both meetings. She cannot. The First Amendment protects speech. It does not protect disruption of a school-board meeting, which District Policy KFA prohibits and which A.R.S. § 13-2911 makes either a Class 6 felony or a Class 1 misdemeanor, depending on which provision of A.R.S. § 13-2911 a person violates.

A.R.S. § 13-2911(D) authorized the governing board to adopt a rule to maintain public order on its property.  Pursuant to this law, the Board adopted Policy KFA, a copy of which is attached as Exhibit 3 to the complaint.   Policy KFA prohibited anyone from engaging "in conduct that may cause interference with or disruption of an educational institution."

In her response, Plaintiff Diann Amaro tries to recast this case as one of free-speech only and to use the First Amendment as a get-out-of-jail card.  The effort fails.  This is a disruption-of-public-business case.  Amaro disrupted the District's governing-board meetings held on April 22, 2025, and May 13, 2025.  What she did is recounted in Exhibits 2 and 4 to the complaint, respectively a letter to Amaro from Superintendent Calles, dated May 13, 2025 (Exhibit 2), and a second letter to Amaro from Superintendent Calles, dated May 21, 2025 (Exhibit 4).  Rule 10(c) makes the exhibits "part of the pleading for all purposes."  What she did is also captured in the videos, the links to which Defendants provided to the Court in their motion.  Thus, the Court can and should consider the letters in motion-to-dismiss proceedings, without converting the motion to one for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Specifically, the Court may assume that the contents of the letters "are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Ritchie*, 342 F.3d at 908.  The Court also can consider the videos of the April 22 and May 13 board meetings, which the District took and kept in the ordinary course of its business as public records authorized by A.R.S. § 38-431.01(C).

**1.     The May 13 Letter.**

The May 13 letter (Exhibit 2 to the complaint) recounted Amaro's disruption of the April 22 meeting and warned her of the consequences if she did it again:

> [S]pecifically you stormed out of the Governing Board room shouting profanities and slamming your hand against chairs in the presence of minors

and while the Board was receiving a presentation which is in violation of the policies of the Tolleson Union High School District Governing Board, specifically District Policy KFA – Public Conduct on School Property.

You violated District Policy KFA – Public Conduct on School Property in the following way:

Use of profanity, disturbance of a presentation and assaulting District furniture

**2.     Amaro Disrupted the May 13 Meeting.**

The warning had no effect. Amaro proceeded to disrupt the May 13 meeting. The May 21 letter (Exhibit 4) recites:

[Y]ou have disrupted and interfered with the Governing Board Meetings of the District, specifically you were shouting profanities from the podium despite the warning that was issued to you previously on May 13. You are in violation of the policies of the Tolleson Union High School District Governing Board, specifically District Policy KFA – Public Conduct on School Property.

You violated District Policy KFA – Public Conduct on School Property in the following way:

Use of profanity, disturbance of a presentation and assaulting District furniture on a prior notice and repeated profanity on May 13, 2025.

**3.     The April 22 Video.**

The permission requirement resulted from her disruption of the April 22 meeting. This video is the best evidence of this behavior and was incorporated in the pleadings by reference.

**4.     The May 13 Video.**

In the May 21 letter, the Superintendent stated, "you have disrupted and interfered with the Governing Board Meetings of the District, specifically you were shouting

3

profanities from the podium despite the warning that was issued to you previously on May 13." Amaro seeks to narrow this case only to profanity. The video shows much more:

> Good evening, again, my name is Diana Amaro, I am a parent to a student that attends Tolleson Union High School and my family has been in this community for more than a hundred years. I am coming up here tonight to say just a few things. One, the last time I was in this meeting…uh… a couple weeks ago I left and said some ugly words and, you know, I said that because your behavior is vulgar. So, the community's response is going to be vulgar. And, if you don't like it then maybe you should change the way you're making decisions. Because this is not your money, this is our money. This is our community. We work hard every single day. We have jobs. I know not all of you guys actually go to f…king work. I am sorry. Ah my bad, that's my bad. I know not all of you guys go to work but we all have jobs. And, we pay the taxes that you guys are asking for this money its not your money to be paying, a HUD program? Community to help the community with that. That's not your job. Worry about the curriculum, worry about student safety, worry about if they have the supplies that they need, if the teachers have the the resources that they need, you don't know need to be worrying about the City's Hud program, you all aren't even allowed to be participating in the city.

(Video at 2:40:20 – 2:42:36) (*See* video for complete view).

Throughout Plaintiff's public comments she pointed fingers and attempted again to "rile up" the crowd, to use her words. Video at 2:41:04, she pointed directly at Superintendent Calles and said, "this is not your money". She immediately turned from the lectern and pointed to the audience and stated, "this is our money." She continued to point at the board members when she said, "not all of you guys actually go to f…king work," and pointed to the crowd when she referred to their payment of taxes. She stopped presenting to the Board altogether and appealed directly to the crowd stating, "today, you guys, I was given a letter." *Id.* at 2:41:50. She moved the microphone to speak more clearly to the crowd. *Id.* at 2:41:56. She turned back to point at the dais and to refer to "these people" so that the crowd would know to whom she was referring. Throughout the video, Amaro can be seen addressing the audience, moving away from the lectern to address the

audience, and then moving back to accuse the board members of items not related to the board or the board meeting.

### 5.    The District's Action

Acting with the authority conferred on him by District Policy KFA, and A.R.S. § 13-2911(D), Superintendent Calles instructed Amaro in the May 21 letter as follows:

> You are instructed to immediately leave and/or remain off of all property of the District, and to strictly comply in the future with District Policy KFA – Public Conduct on School Property, to wit, that you shall never come upon or remain upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District property.

The Goldwater Institute then intervened in this matter, took on Amaro's representation, and on July 16, 2025, sent a letter (Exhibit 5 to the complaint) on her behalf to Superintendent Calles complaining about the instructions he had given Amaro in the May 21 letter.  Superintendent Calles took the July 16 letter into consideration.  In response to it, the Superintendent relaxed the instruction given in the May 21 letter by means of a letter to Amaro, dated July 29, 2025 (Exhibit 6 to the complaint.) In the July 29 letter, the Superintendent wrote:

> You are hereby given approval to attend all school activities that directly involve your child. This includes picking up and dropping off at school as well as any extracurricular activities that your child chooses to participate in. All other restrictions to remain off of all property of the District, and to strictly comply at all times in the future with District Policy KFA - Public Conduct on School Property, to-wit, that you shall never come upon or remain upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District property still apply. You may not bring your child to a Governing Board Meeting as an attempt to justify your presence as a school activity. Any questions you have pertaining to this notice can be directed to my office.

**6.    Amaro's Claims.**

The complaint does not allege that the letters of May 13, May 21, and July 29 (Exhibits 2, 4, and 6) were pretextual. Her complaint in substance failed to state a valid claim for relief and should be dismissed. The First Amendment does not protect disruptions of a school-board meeting, shouting profanities, and slamming furniture.

## PLEADING STANDARDS

When exhibits are attached to a complaint, the exhibits are deemed part of the complaint for all purposes, including for purposes of determining the sufficiency of the claims. *See* Fed.R.Civ.P. 10(c); 5A Wright & Miller, Federal Practice and Procedure: Civil 3d § 1327, at 443–44 (2002). If an exhibit attached to a complaint contradicts an assertion in the complaint and reveals information that prohibits recovery as a matter of law, **the information provided in the exhibit trumps the allegation in the complaint.** *Wilson v. Fitter*, 2009 WL 6908049, at *2 (C.D. Cal. Nov. 5, 2009) *report and recommendation adopted*, 2010 WL 3893992 (C.D. Cal. Sept. 30, 2010) (citing *Riggins v. Walter*, 279 F.3d 422, 425–26 (7th Cir. 1995) (affirming dismissal of prisoner's § 1983 claims where information in attached exhibit contradicted allegation of complaint); *Hudson v. Phillipson*, 2008 WL 356884, *3 (W.D. Mich. Feb. 7, 2008) (dismissing prisoner's § 1983 claims where information in attached exhibits conflicted with allegations of complaint)) (emphasis added.)

*Angelone v. Brown*, No. C24-96, 2024 WL 4610558, at *2 (E.D. Wash. Oct. 29, 2024) .

## ANALYSIS

**1.    Amaro Never Disputed the Motion's Recount of Her Disruptions.**

Amaro's disruptions of the April 22 and May 13 meetings are recounted in the May 13 and May 21 letters (Exhibits 2 and 4 to the complaint) and in the videos of the meetings available at the links provided to the Court. At the links, the Court can she exactly what she did and hear what she said.  In her response, Amaro did not challenge the accuracy of the recount of her disruptions set forth in the letters. Rather, she relies exclusively on the allegations she made in the complaint.  Yet, the letters, made part of the complaint by

Amaro's attachment of them to the complaint, trump the characterizations of them that she made in her allegations in the complaint. *Angelone*, *supra*, 2024 WL 4610558, at *2.

As for the videos' capture of her disruptions, she never even bothered to respond to the section of the motion (5:20-7:18) relating to them. Rather, she has crafted her response (6:26-8:4) to recast the disruptions as free speech, *i.e.* whether the First Amendment protects the uttering of profanities at a school-board meeting. She argued that "she pleaded that there was no actual disruption at either the April 22 or May 13 meetings resulting from the brief utterance of some profanities." (Response at 7:10-11.) The response thus ignores the fact that her actions constituted the disruptions, regardless of whether any of the public joined in.

The May 13 letter, quoted above, documents the disruption she caused of the April 22 meeting: "[S]pecifically you stormed out of the Governing Board room shouting profanities and slamming your hand against chairs in the presence of minors and while the Board was receiving a presentation." The May 21 letter, quoted above, documents the disruption she caused of the May 13 meeting, after she received the May 13 letter warning her against further disruptions of Board meetings: "specifically you were shouting profanities from the podium despite the warning that was issued to you previously on May 13." The video of the May 13 meeting further documents her yelling profanities and threatening statements at the board members and of inciting the audience.

The disruptions are not free speech. The First Amendment grants no right to anyone to disrupt school-board meetings by interrupting presentations, shouting profanities, shoving furniture, yelling threatening statements to Board members, and inciting the audience at the board meetings.

**2.    The May 21 Letter and July 29 Letter Did Not Ban Amaro.**

The May 21 and July 29 letters did not ban Amaro from coming onto District property. The May 21 letter required her to get permission from either the Superintendent

or a principal to come onto District property. Responding to the objections made by Amaro's counsel in his July 16 letter, the July 29 letter relaxed such restrictions:

> You are hereby given approval to attend all school activities that directly involve your child. This includes picking up and dropping off at school as we l l as any extracurricular activities that your child chooses to participate in.

The upshot is that the District did not ban Amaro from anything that directly involved her child. Nor did it ban her from anything else. For functions not involving her child, s merely has to ask permission. Tellingly, she has not alleged that she ever asked for permission but was refused or denied permission. Nor did she ask for a hearing.

Nonetheless, Amaro tries to make five theoretical distinctions (Response at 8:22-10:15) in an effort to make the permission requirement into something more than it is:

First, she argued permission is discretionary. However, she does not allege that she ever asked for permission; that it was denied or refused, had she actually asked for it; or that that the District ever was unreasonably dilatory in making the determination whether to grant permission, since she never alleged that she asked for it. Accordingly, to date, she has suffered no injury, and on this point her complaint is premature and not ripe.

Second, she argued that the decision whether to grant permission was vested in the Superintendent, the person whom she argued had retaliated against her. However, the May 13, May 22, and July 29 letters show anything but retaliation. In the May 13 letter, the Superintendent issued a warning to Amaro not to disrupt further governing board meetings. On May 13, the same day she got the letter, she promptly proceeded to ignore it and to disrupt the May 13 meeting, despite the warning. In the May 22 letter, exercising the authority vested in him by A.R.S. § 13-2911 and Policy KFA, the Superintendent issued the permission requirement on account of Amaro's ignoring the warning and disrupting the May 13 meeting. In the July 29 letter, the Superintendent relaxed the permission requirement and removed it from school functions involving her child.

However, Amaro makes no allegation that the Superintendent ever denied a permission request or that she ever asked him for permission.  Absent an allegation that she requested permission, which she has never alleged, this point is also premature and not ripe.

Third, she argued that her speech was the but-for cause of the permission requirement.  However, she can't rewrite the May 22 letter.  It states the reasons: "Use of profanity, disturbance of a presentation and assaulting District furniture on a prior notice and repeated profanity on May 13, 2025."

Fourth, she argues that Policy KFA allows a member of the public to be punished *exclusively* for speech (italics in the original.)  Yet, she was not punished for speech.  She suffered the permission-requirement because of her disruptions.  As a result, she has suffered no injury to her free-speech rights, regardless of what theoretically could happen to someone else.  The ripeness and actual-injury requirements of article III prevent her from arguing free-speech rights of other people.

Fifth, no genuine fact question exists regarding disruption.  The May 13 and May 21 letters and the videos document it, and she has not disputed theior accuracy.

**3.      Policy KFA as Applied Did Not Violate Amaro's Free Speech Rights**.

Amaro concedes that a school-board meeting is a limited public forum. (Response at 11:1-5.)  She further concedes that the District can adopt reasonable and content-neutral time, place, and manner regulations of speech made at a limited public forum. (*Id.*)  Yet she argues that Policy KFA is neither reasonable nor content neutral.

Her as-applied argument against Policy KFA is theoretical, not properly made in an Article III court.  The District has not regulated her speech at all. She still can come to Board meetings with permission, and when there, she is free to say anything she wants at the call to the public or on particular agenda items.   The District regulated her disruptions of the April 22 and May 13 meetings, as documented in the May 13, May 22, and July 29 letters, which the District can do under A.R.S. § 13-2911 and Policy KFA as reasonable

time, place, and manner regulations. *Hartzell v. Marana Unified School District*, 130 F.4th 722, 734 (9th Cir. 2025); *Reza v. Pearce*, 806 F.3d 497, 502 (9th Cir. 2015); *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 269 (9th Cir. 1995).

In her response, Amaro cited *Hartzell* for the proposition that the District cannot prohibit speech that it finds "offensive or inappropriate." (Response at 11: 5-12:11.) She further argues that the actual reason for the District's restriction makes a jury question. (*Id.*) The function of a jury is to decide fact questions. In this case, there is no fact question. The May 13 and May 22 letters document her disruptions of the April 22 and May 13 meetings as the reason for the permission requirement. Again, Amaro never alleged that the letters were pretextual. Thus, they do not frame a jury question.

**4.    The Permission Requirement Did Not Violate Due Process.**

In the motion at 12:11-13, Defendants quoted *Hartzell v. Marana Unified School District*, No. CV-21-00062-TUC-SHR, 2023 WL 2425009, at * 7 (D. Ariz, March 9, 2023) as follows: " Because Plaintiff had no constitutional right to access school property, no procedural due process was required before Plaintiff was banned from the property."

Citing *Volmecke v. Independence School District*, 753 F.Supp.3d 792 (W.D.Mo. 2024), Amaro argues that the permission requirement violated her due process rights. *Volmecke* is a District Court case from another circuit and does not bind this Court. It is distinguishable in any event. Amaro never asked for a hearing or an appeal.

Amaro argues that the District needed to afford her procedural due process before requiring her to obtain permission to come onto District property for matters not involving her child. (Response at 12:14-13:18.) The permission-requirement does not prohibit her from exercising free speech. It results from the disturbances that she caused of the April 22 and May 13 meetings. Nor is it a heavy burden. She has never alleged that she either asked for permission or was denied it. Even though this is a free-speech case, the principle

remains that "even in the field of constitutional torts de minimis non curat lex." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).

Even if the permission requirement were more than *de minimis*, which it isn't, she received due process.  The facts are not in dispute.  They are documented in the May 13 and May 21 letters and in the video.  Nor has Amaro challenged the factual determinations made in the letters.  Thus, no process was required for the undisputed factual determinations.  What she disputes is whether the District can do anything in response to her two disruptions of governing board meetings.  It can under *Hartzell*, *Reza*, and *Kindt*.

The Superintendent first imposed the permission requirement in the May 21 letter. Amaro's counsel wrote the July 16 letter objecting to it.  In response to the July 16 letter, the Superintendent removed any permission-requirement for functions involving Amaro's child.  Yet, it remains that she never asked for a hearing.  In the July 16 letter, her specific request was "that the District immediately and completely revoke the Letter dated May 21, 2025."  On July 29, Superintendent Calles modified the letter to permit Amaro to "attend all school activities that directly involve your child."  In her August 19 letter (Exhibit 7 to the complaint), Amaro restated that the ban was because of speech only. What's more, Policy KEB provides a complaint process, which she never followed.

**5.      The Superintendent Is Entitled to Qualified Immunity.**

Amaro responds to the Superintendent's immunity defense, claiming the Superintendent violated Amaro's free speech rights, which were well established before he did so. (Response at 13:19-15:24.)  The argument fails for the reasons that the District imposed the permission requirement because of Amaro's disruptions of the April 22 and May 13 meetings and not because of her exercise of free speech, as documented in the May 13 and May 21 letters and the videos of both meetings.

**CONCLUSION**

For the foregoing reasons, the Court should grant the motion and dismiss this case.

11

RESPECTFULLY SUBMITTED on January 22, 2026.

**CANTELME & BROWN, P.L.C.**


/s/  David J. Cantelme, AZ. St. Bar No. 006313
2020 S. McClintock Drive, Suite 109
Tempe, Arizona 85282
*Attorneys for Defendants Tolleson Union High School*
*District and Jeremy Calles*


**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2026, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system and via email to:

Jonathan Riches, Esq.
Timothy Sandefur, Esq.
Adam Shelton, Esq.
Scharf-Norton Center for
Constitutional Litigation at the
GOLDWATER INSTITUTE
500 E. Coronado Road
Phoenix, Arizona  85004
jriches@goldwaterinstitute.org
tsandefur@goldwaterinstitute.org
ashelton@goldwaterinstitute.org
kschlott@goldwaterinstitute.org
*Attorneys for Plaintiff*


/s/ D. Udvarnoky