**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Diann Amaro,

        Plaintiff,

v.

Tolleson Union High School District, *et al.*,

        Defendants.

No. CV-25-03919-PHX-JJT

**ORDER**

Before the Court is Defendants Tolleson Union High School District ("District") and Jeremy Calles's Motion to Dismiss for Failure to State a Claim for Relief (Doc. 15, Mot.), to which Plaintiff responded (Doc. 17, Resp.), and Defendants replied (Doc. 20, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

## I.    BACKGROUND

At the time of filing her Complaint, Plaintiff's child was a senior student at a school operated by the District and Mr. Calles, the superintendent of the District. (Compl. ¶ 6.) Plaintiff spoke at several District board meetings beginning in January 2025 critiquing various decisions made by Defendants about their spending and allocation of the budget, deployment of safety measures, and changes to district personnel. (Compl. ¶¶ 17–23.) Plaintiff also helped form Citizens for Schools Accountability, a nonprofit organization with one goal being to hold Defendants accountable for their spending. (Compl. ¶¶ 4, 33.)

While attending a board meeting on April 22, 2025, Plaintiff was frustrated by the board tabling an agenda item regarding personnel changes. (Compl. ¶ 24.) As Plaintiff left the meeting, she said: "It's so crazy that you can spend fucking money but we can't deal with this shit, huh? I'm fucking done with the shit." (Comp. ¶ 24.) Plaintiff spoke twice more at a May 13, 2025 board meeting to criticize Defendants' spending, at one point relaying that the money spent was taxpayer money and not all members of the board "actually go to fucking work." (Compl. ¶¶ 25–26.)

During that May 13 meeting, Defendants delivered to Plaintiff a letter that was a "final warning." (Compl. ¶ 27–30.) That letter, which Plaintiff attaches as an exhibit to her Complaint, was authored by Mr. Calles and states:

> . . . I have determined that you have disrupted and interfered with the Governing Board Meetings of the District, specifically you stormed out of the Governing Board room shouting profanities and slamming your hand against chairs in the presence of minors and while the Board was receiving a presentation which is in violation of the policies of the Tolleson Union High School District Governing Board, specifically District Policy KFA – Public Conduct on School Property . . . in the following way:
>
> Use of profanity, disturbance of a presentation and assaulting District furniture[.]
>
> This is your final warning and one more incident will result in you being instructed to immediately leave and/or remain off of all property of the District, and to strictly comply at all times in the future with District Policy KFA – Public Conduct on School Property, to-wit, that you shall never come upon or remain upon any school premises of the District without the approval of the Superintendent or the Principal of the school which you seek to enter, including buildings, parking lots, playing fields, sidewalks, playgrounds, and any other District property.

(Compl. at 20 (first letter).) Policy KFA provides that "[n]o person shall engage in conduct that may cause interference with or disruption of an educational institution . . . by

committing any of the following: . . . E. Use of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment." (Compl. at 21–22.) Plaintiff did not read Mr. Calles's letter until after the May 13 meeting. (Compl. ¶ 28.)

One week later, Plaintiff spoke outside District headquarters at a press conference for Citizens for Schools Accountability and called for the resignation of the board. (Compl. ¶ 32.) Plaintiff attended a board meeting later that day and, before the meeting began, Mr. Calles personally handed her a second letter. (Compl. ¶ 32.) Plaintiff did not immediately read the letter and stayed at the meeting. (Compl. ¶ 32.)

After the meeting, Plaintiff read the second letter that stated in relevant part: "You violated District Policy KFA – Public Conduct on School Property in the following way: Use of profanity, disturbance of a presentation and assaulting District furniture on a prior notice and repeated profanity on May 13, 2025." (Compl. at 24 (second letter).) Plaintiff was instructed to remain off District property absent approval from Mr. Calles or the principal of the school she sought to enter. (Compl. ¶ 37; *see also* Compl. at 24.)

A few months passed and Plaintiff, through counsel, demanded that Defendants revoke the ban. (Compl. ¶ 41; *see also* Compl. at 25–28 (first demand letter).) In response, Defendants modified the ban to give her "approval to attend all school activities that directly involve [her] child … [including] picking up and dropping off at school as well as any extracurricular activities that [her] child chooses to participate in," but all other restrictions applied, including that Plaintiff was not permitted to "bring [her] child to a Governing Board Meeting as an attempt to justify [her] presence as a school activity." (Compl. ¶¶ 44–45; *see also* Compl. at 29 (letter amending ban).)

Plaintiff sent a second demand letter calling for the revocation of the ban once more. (Compl. ¶¶ 47–50; *see also* Compl. at 30–36 (second demand letter).) Mr. Calles declined by email. (Compl. ¶¶ 51–53; *see also* Compl. at 37 (response email).)

Plaintiff sued Defendants on the following claims: (1) retaliation against Plaintiff in violation of her First Amendment right to free speech under 42 U.S.C. § 1983; (2) as-

applied constitutional challenge to Policy KFA; and (3) violation of Plaintiff's Fourteenth Amendment right to procedural due process under § 1983. (Compl. ¶¶ 66–92.) Defendants now move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

## II.    LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

"A motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure admits all well pleaded facts, but does not admit facts which the court will judicially notice as not being true nor facts which are revealed to be unfounded by documents included in the pleadings or introduced in support of the motion." *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 384 (9th Cir. 1953); *see also* Fed. R. Civ. P. 10(c) ("("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

"Although, as a general rule, a district court may not consider materials beyond the pleadings in ruling on a Rule 12(b)(6) motion, one exception to this general rule is that a 'court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute.'" *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (citation omitted).

### III.   ANALYSIS

#### a.   First Amendment Claims

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (citation modified). Here, Plaintiff claims that the District and Mr. Calles banned her from District property in retaliation for her protected speech in violation of § 1983. (Compl. ¶¶ 66–77.) Plaintiff alleges that Defendants relied on Policy KFA to ban Plaintiff, and that policy is unconstitutional under the First Amendment as applied to Plaintiff. (Compl. ¶¶ 78–87.)

As relevant to both the retaliation claim and constitutional challenge to Policy KFA, "[w]e begin by determining what kind of forum the Building is because the type and scope of restrictions the government may place on speech depends on where the speech occurs." *Reza v. Pearce*, 806 F.3d 497, 502 (9th Cir. 2015). The parties do not dispute that the Governing Board meetings where Plaintiff spoke were a limited public forum. (Mot. at 8 n.4; Resp. 7.)

Control over access to limited public forums "can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985), *accord Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009). "But we have also made clear that courts must apply the First Amendment in light of the special characteristics of the school environment." *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. 180, 187 (2021) (citation modified). "[F]or school officials to justify prohibition of a particular expression of opinion, they must be able to show that their action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 737 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 298 (2025) (citation modified). While speech regulation that would ordinarily run afoul of the First Amendment may be justified in school settings, there is no justification when the regulation forbids conduct that does not "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Id.* (citation modified).

Mindful of this context, the Court will first determine whether Plaintiff sufficiently states a claim challenging the constitutionality of Policy KFA as applied to her, then address Plaintiff's retaliation claim.

### i.    As-Applied Challenge to Policy KFA

Plaintiff alleges that "Policy KFA allows Defendants to ban individuals, like Plaintiff, entirely because of that individual's speech . . . By enforcing Policy KFA against Plaintiff, Defendants punished Plaintiff simply because Defendants found Plaintiff's speech to be 'offensive or inappropriate.'" (Compl. ¶¶ 83, 85.) Defendants argue that "[t]his case goes beyond speech" and includes not only Plaintiff's use of "vulgar language," but shoving furniture and attempting to incite the audience, all in the presence of children. (Mot. at 10.) Defendants' argument, in other words, turns on whether that combination of

speech and conduct amounts to "something more" that would warrant Defendants' regulation of that activity under Policy KFA.

Both parties generously cite a recent Ninth Circuit case, *Hartzell*, which evaluated the constitutionality of the same Policy KFA that was maintained by a different Arizona school district. In *Hartzell*, a parent frequently criticized various ongoings at her children's school, including that her two children were scheduled to present a project at the same time such that the parent could not watch both presentations. 130 F.4th at 728–30. While attending that event, the parent approached the principal and sarcastically thanked the principal for "making [her] choose which kid [she was] going to support again today." *Id*. at 729. The parent also touched the principal's wrist during the interaction. *Id*. at 730. The parent was indefinitely trespassed from school property for assault, except that she could pick up her child. *Id*. at 731. The parent sued the district, asserting that the district's application of Policy KFA was unconstitutional because it was motivated by her critique of the principal. *Id*. at 737.

The Ninth Circuit found that Policy KFA's prohibition against "speech or language that is offensive or inappropriate to the limited forum of the public school educational environment" was unconstitutional as applied to the parent because the school's authority *in loco parentis* (*i.e.*, in the place of a parent) was not at play where the speech was "made by a parent to an administrator outside of the presence of students except for the parent's child," and the language was "critical and sarcastic" but not "vulgar or lewd" made before "an unsuspecting audience of students" unlike the speaker in *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986), who made a "pervasive sexual innuendo . . . glorifying male sexuality . . . [and] acutely insulting to teenage girl students" before a student assembly of 600 teenagers.[1] *Id*. at 738.

[1] As an aside, after the Ninth Circuit in *Hartzell* remanded the case, a jury returned a verdict finding the district liable for the parent's first amendment retaliation claim. Plaintiff moves for leave to file a notice of supplemental authority based on this jury verdict. (*See* Doc. 22.) But, as Defendants point out, a jury verdict form is not substantive law. (Doc. 23) *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *10 (D. Ariz. Apr. 20, 2012) ("The judgment, which represents the jury verdict, does not itself carry precedential value that would facilitate the resolution of disputes in future cases."). The Court will not consider the jury verdict in *Hartzell* as authority to guide it in its analysis

- 7 -

Defendants also reference *Reza v. Pearce*, 806 F.3d 497 (9th Cir. 2015) for the proposition that they can "control disturbances at public meetings." (Mot. at 10–11.) In *Reza*, the plaintiff attended a legislative hearing and sat in an "overflow room" where attendees, including the plaintiff, applauded and booed while the hearing went on. *Id*. The plaintiff was approached by an officer to silence the audience, but the plaintiff refused and said, "go ahead, throw me out." *Id*. The audience could be heard during the hearing, but the hearing was not halted or delayed. *Id*. at 504. The plaintiff was banned from entering the building. *Id*. at 500. He sued under the First Amendment, and the Ninth Circuit determined that these facts raised triable issues of material fact and remanded the plaintiff's claim for further proceedings.

Here, Defendants cite *Hartzell* and *Reza* to support that Plaintiff caused a disturbance that warranted their regulation of her speech. Defendants contend that Plaintiff used vulgar language in front of children, shoved furniture, and disturbed presentations. The letters prepared by Mr. Calles depict Plaintiff's conduct in this way, and Defendants argue that those characterizations trump Plaintiff's allegations because she attached and referred to those letters in her Complaint. (Reply at 6–7.) *See* Rule 10(c); *see also Angelone v. Brown*, No. 2:24-CV-096-TOR, 2024 WL 4610558, at *2 (E.D. Wash. Oct. 29, 2024); *Avila v. Cate*, No. 1:10-CV-01208 JLT, 2011 WL 2680844, at *5 (E.D. Cal. July 8, 2011). Defendants also urge the Court to view the recordings of the two meetings published on YouTube that audibly demonstrate Plaintiff's speech. (Mot. at 5–7.)

Assuming that the Court could take judicial notice of the YouTube recordings without converting Defendants' motion to one for summary judgment, and assuming the content of the letters contradicts Plaintiff's allegations regarding her conduct at the meetings and therefore trumps those allegations, Plaintiff still sufficiently alleges that the Policy KFA is unconstitutional as applied to her.

First, the recordings, letters, and allegations do not suggest that her speech amounted to a disruption that would render it unprotected by the First Amendment. *See, e.g.*, *Reza*,

here and will accordingly deny Plaintiff's motion for leave.

806 F.3d at 504–05 (finding that whether the plaintiff disrupted legislative hearing that proceeded despite the noise was a question of fact); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 976 (9th Cir. 2010) ("Actual disruption means actual disruption. It does not mean constructive disruption, technical disruption, virtual disruption, *nunc pro tunc* disruption, or imaginary disruption."). While Defendants urge the Court to take as true Mr. Calles's letters that characterized Plaintiff's conduct as a "disturbance" (Reply at 6; *see* Compl. at 20, 24 (letters)), that characterization is conclusory and is otherwise contradicted by the recordings of those meetings that the Court reviews at Defendants' behest (*see* Mot. at 5-7). For instance, in the April 22 recording, Plaintiff can be heard speaking over the podium speaker for approximately five seconds before she "stormed out" of the meeting, and the podium speaker continued her remarks and the meeting proceeded without pause. The May 13 recording shows that Plaintiff only spoke during her own podium time, and at the end of her speech the board called the next speaker and the meeting continued for another two hours without incident. (*See also* Compl. ¶ 32.)

Second, Defendants argue that Plaintiff's speech was vulgar, inciteful, and threatening, which amounts to "something more" that disturbs the meeting and warrants regulation. (Mot. at 10–11; Reply at 7.) Whether the language she used, combined with her tone and the setting, might be construed by some as vulgar, inciteful, or threatening as Defendants portray, or as impassioned, animated, critical, and perhaps sarcastic as Plaintiff portrays, is the kind of factual dispute that the Court cannot resolve now. Rather, it must construe those allegations and the other material before it in a light most favorable to Plaintiff and accordingly declines to find that speech was so "vulgar," "inciteful," or "threatening" to render it unprotected by the First Amendment.

Third, while a young child was present during the April 22 meeting, the Court is not convinced at this stage that the case law renders Plaintiff's speech unprotected based on the presence of a single child who was in the care of his own parent. *Compare Hartzell*, 130 F.4th at 738 (finding the school's authority *in loco parentis* did not justify speech regulation where the child who heard the speech was in their parent's care) *with Bethel*,

- 9 -

478 U.S. at 684–85 (finding the use of a "a sexually explicit monologue" during school assembly of 600 students warranted regulation).

Lastly, Defendants argue that the ban is reasonable because it is "narrowly tailored, permitting limited access with permission from the Superintendent or a principal," and is not "permanent." (Mot. at 5.) Plaintiff responds that this carve-out is meaningless, as her access to District property hinges on Defendants' "standardless, absolute discretion," and effectively serves as a permanent ban. (Resp. at 6.) The effect of the ban turns on facts that the Court cannot resolve at this stage, such as whether the permission-requirement is meaningless or subjective, whether the ban is unreasonable in light of the purpose of the limited public forum, or whether the regulation bans contrary viewpoints under the guise of being "offensive and inappropriate." *See, e.g.*, *Hartzell,* 130 F.4th at 737–38. At this stage, Plaintiff's allegations and the language of the ban, which the Court must construe in a light favorable to Plaintiff, can be interpreted to impose an unreasonable restriction of Plaintiff's protected speech.

On balance, Plaintiff's allegations, even when viewed together with the recordings and letters, sufficiently allege that the provision of Policy KFA barring "offensive or inappropriate" speech is unconstitutional if Defendants applied it to ban Plaintiff from District property because of her criticism of them.

### ii.      First Amendment Retaliation Claim

To state a claim under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States," committed by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "To recover under § 1983 for such retaliation, a plaintiff must prove: (1) [s]he engaged in constitutionally protected activity; (2) as a result, [s]he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

The parties do not dispute that Defendants were acting under color of state law during the relevant time alleged in the Complaint. Defendants instead argue that Plaintiff does not sufficiently state a constitutional violation because "[d]isturbance of governing board meetings is not constitutionally protected." (Mot. at 14.) That argument is the same one Defendants raise to support Policy KFA, and it fails for the same reasons addressed above. The Court finds that Plaintiff sufficiently alleges facts supporting that her speech at the meetings was protected, that Mr. Calles issued his letters because of Plaintiff's speech, that Mr. Calles acted under the District's official Policy KFA, and that the "permission-requirement" regulation imposed on Plaintiff would chill others from criticizing the board at the meetings. This is enough to state a retaliation claim under the First Amendment.

### b.    Fourteenth Amendment Claim

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). "A section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Hartzell*, 130 F.4th at 744 (citation omitted).

Plaintiff alleges that the ban imposed by Defendants was "arbitrary" and that she "received no individualized process whatsoever, either before or after the Order banning her from all TUHSD property in perpetuity." (Compl. ¶¶ 90–91.) According to Plaintiff, she "was deprived of any opportunity to challenge the ban from TUHSD property before a neutral decision maker." (Compl. ¶ 90.)

Defendants read her allegations as asserting a right to access District property generally and argue that Plaintiff has no such liberty or property interest. (Mot. at 11–13). Plaintiff contends that Defendants misread her allegations. According to her, she asserts "a right as a citizen to enter government property when the property is opened to the public and a liberty interest in engaging in speech in a limited public forum," not merely "a

parental right to access school Property." (Resp. at 12.) But the assertions underlying Plaintiff's due process claim are sparser than Plaintiff acknowledges, and broadly complain of a lack of "opportunity to challenge the ban from TUHSD property." (Compl. ¶ 90.) The Court cannot extrapolate the specific meaning that Plaintiff advances based on the general due process theory she alleged in her Complaint. The only plausible interpretation the Court can surmise from the pleading is that Plaintiff alleges a liberty or property interest to enter District property. Defendants argue that such a generalized interest does not exist and cite cases supporting that proposition, and Plaintiff does not contend otherwise. (*See* Mot. at 11–12.) Accordingly, the Court will dismiss Plaintiff's due process claim (Count Three) with leave to amend the claim to assert specific grounded facts supporting the elements of a § 1983 due process claim.

### c.    Qualified Immunity

Qualified immunity shields a government official from damages in a § 1983 action if the plaintiff shows that the official's conduct violated a constitutional right and that the right was "clearly established" at the time of the conduct. *Nelson v. City of Davis*, 685 F.3d 867, 875(9th Cir. 2012). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although a case need not be "directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011).

Defendants argue that Mr. Calles is entitled to qualified immunity because Plaintiff "had no clearly established right to disturb Governing Board meetings as she did." (Mot. at 5; Reply at 11.) But, as discussed above, Plaintiff sufficiently alleges that her speech at the meetings was protected by the First Amendment and the ban instituted by Defendants under Policy KFA was effectively a permanent ban that violated her constitutional right to engage in that speech. Plaintiff cites *Hartzell* and *Reza*, among other cases, show that the right to engage in speech at the board meetings was clearly established (*see* Resp. at 14–15), and Defendants do not meaningfully challenge Plaintiff's argument (*see* Reply at 11).

- 12 -

Accordingly, the Court finds that Mr. Calles is not entitled to qualified immunity as to Plaintiff's remaining First Amendment claims.

**IT IS ORDERED** granting in part and denying in part Defendants' Motion to Dismiss for Failure to State a Claim for Relief (Doc. 15).

**IT IS FURTHER ORDERED** dismissing Count Three of Plaintiff's Complaint (Doc. 1), with leave to amend that count only no later than **fourteen (14) days** from the date of this Order. If Plaintiff chooses to do so, she may file an amended pleading on the docket and must also file a separate notice of filing with an attached copy of the amended pleading that indicates in what respect it differs from the Complaint, pursuant to Local Rule of Civil Procedure 15.1(b). Should Plaintiff not file a timely Amended Complaint, Defendants shall file an Answer to the Complaint (Doc. 1) no later than **twenty-one (21) days** from this Order.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Leave to File Notice of Supplemental Authority (Doc. 21).

Dated this 1st day of July, 2026.

_____
Honorable John J. Tuchi
United States District Judge

- 13 -